THE STATE, EX REL. GRAHAM ET AL., v. MILLER ET AL.

1. **Life Insurance:** ANCIENT ORDER OF UNITED WORKMEN: SUPREME LODGE—A FOREIGN CORPORATION—NOT AUTHORIZED TO DO BUSINESS IN IOWA, UNDER CODE, § 1160: GRAND LODGE OF IOWA: CONFLICTING CLAIMS TO FRANCHISES. The avowed and actual purposes of the Ancient Order of United Workmen considered, (see opinion,) and said order *held* to be an insurance company, within the meaning of § 1160 of the Code; and, inasmuch as the supreme lodge of said order is a corporation of the state of Kentucky, and has not a guaranteed capital of $100,000 in that state, as required by said section, *held*, further, that it is not authorized to transact business within this state, and that its mandate to the grand lodge of this state to raise a fund to relieve overburdened jurisdictions in other states was not binding upon the grand lodge of this state; and where, upon the refusal of the grand lodge to raise such fund, the supreme lodge declared its charter suspended, and a provisional grand lodge was organized under the authority of the supreme lodge, *held* that such action of the supreme lodge did not divest the original grand lodge of its rights, privileges and franchises, and vest them in the provisional grand lodge.

*Appeal from Black Hawk Circuit Court.*

WEDNESDAY, APRIL 22.

THE petition states that the grand lodge of the Ancient Order of United Workmen of Iowa is a corporation duly

organized under chapter 2, title 9, of the Code of Iowa, relating to corporations other than those for pecuniary profit; that its articles of incorporation were duly filed and recorded in the recorder's office of Scott county, in said state, in June, 1874. The object of this action is to determine who are the officers of the grand lodge, and who are entitled to its rights, privileges and franchises,—the relators and those they represent, or the defendants and the persons they represent. The petition, at great length, states the facts on which the relators rely. Certain allegations of the petition were admitted and others denied by the defendants. The material facts are sufficiently referred to in the opinion. There was a trial by jury, and the plaintiffs introduced their evidence, at the conclusion of which "the defendants moved the court, on the undisputed facts, to instruct the jury to return a verdict for the defendants." This motion was overruled, and the defendants introduced their evidence. The court, on motion, directed the jury to return a verdict for the plaintiffs, which being done, judgment was rendered that the relators and their associates "be, and they are hereby, adjudged and declared to be and to constitute the said corporation, and to be entitled to exercise its corporate rights, powers, franchises and offices." The defendants appeal.

*Nichols & Burnham*, *H. B. Fouke*, *H. Boies* and *J. J. Tollerton*, for appellants.

*Putnam & Rogers*, *Davison & Lane* and *H. C. Hemenway*, for appellees.

SEEVERS, J.—This cause has been elaborately argued in print, and orally at bar. Every conceivable phase of the case has been fully discussed by the able counsel representing the respective parties. The arguments of counsel and the voluminous record have been examined and fully considered, and therefrom we reach the conclusion that the material question to be determined is whether the Ancient

Order of United Workmen is or should be classed as a frater-
nal organization, as the plaintiffs contend it is, or whether it
is a mutual life insurance company, as the defendants con-
tend.   This, as we understand, briefly stated, is the material
contention of the parties.   We do not understand that there
is serious dispute as to the law which must govern the decis-
ion to be made, when the character of the organization is
determined.   It is therefore essential that a full statement
should be made of the organization and objects of the order.
We find from the record that during 1873, or prior thereto,
there were in the states of Pennsylvania, Ohio and Kentucky
organized grand and subordinate lodges of the order.   Rep-
resentatives chosen for that purpose from the said grand
lodges organized in that year a supreme lodge, by adopting
what was designated as the constitution of the supreme lodge
of the Ancient Order of United Workmen.   The objects of
such organization are declared in a preamble or preface to
the constitution to be as follows:  " Pretermitting all refer-
ence to nationality, political opinions, or denominational dis-
tinctions or preferences, but believing in the existence of a
God, the creator and preserver of the universe, and recogniz-
ing as a fundamental principle that usefulness to ourselves
and others is a duty which should be the constant aim and
care of all, the following are submitted as the aims and pur-
poses of the Ancient Order of United Workmen:  (1) To
embrace and give equal protection to all classes and kinds of
labor, mental and physical; to strive earnestly to improve the
moral, intellectual and social condition of its members; to
endeavor by wholesome precepts, fraternal admonitions, and
substantial aid, to inspire a due appreciation of the stern
realities and responsibilities of life.   (2) To create a fund
for the benefit of its members during sickness or other disa-
bility, and in case of death to pay a stipulated sum to such
person or persons as may be designated by each member, thus
enabling him to guaranty his family against want.   (3) The
adoption of such secret work and means of recognition as will

insure the protection of its members wherever the order may exist. . (4) To hold lectures, read essays, discuss new inventions and improvements, encourage research in art, science and literature, and, when practicable, maintain a library for the improvement of the members."

The constitution is lengthy, and contains specific provisions for the government of the order, of which the supreme lodge, as its name indicates, is the supreme authority and head, to which appeals might be taken, and whose decision in relation to any matter legitimately before it is final and conclusive. The material provisions of this constitution will be sufficiently referred to hereafter. In general, it may be now said that under its provisions subordinate lodges might be formed in any state where no grand lodge was in existence, and that such subordinate lodges were under the exclusive jurisdiction of the supreme lodge, and that, when the membership of such subordinate lodges reached a specified number, then a grand lodge might be formed which had jurisdiction over the subordinate lodges in such state, but the supreme lodge had jurisdiction of and the power to control the grand lodge in accordance with the constitution of the supreme lodge and rules of the order. The first meeting of the chosen representatives for the organization of the supreme lodge was held in February, 1873, and, when organized, it or its officers became a corporation under a statute of Kentucky, which authorized the incorporation of the "grand lodge of the A. O. U. W. of Kentucky, and the supreme lodge." Said statute, among other things, provided that "a supreme lodge may be established by this grand lodge, in conjunction with other grand lodges, and when so established the officers thereof and their successors in perpetuity shall become a body politic and corporate, under the name and style of the 'Supreme Lodge of the Ancient Order of United Workmen of the United States;' and on accepting this charter shall be entitled to all the rights, privileges and immunities therein contained, with the power to establish other grand lodges

within the United States, with like powers, privileges and immunities, but subordinate to said supreme lodge." After the organization of the supreme lodge, subordinate lodges under its jurisdiction were organized in the state of Iowa, and thereafter the grand lodge was formed, the amended constitution of which provides that it "shall have full power and privilege of a grand lodge acting in accordance with the privileges granted it by the supreme lodge" of this jurisdiction.

The articles of incorporation of said grand lodge provide that its powers are subject to "such laws, rules and regulations as are now and shall hereafter be prescribed by the supreme lodge of the A. O. U. W. of the United States."

In so far as they have any bearing in this case, the provisions of the constitution of the supreme lodge and the grand lodge are the same, and the preamble to the former declares that one of the objects of the organization is "to create a fund for the benefit of its members during sickness or other disability, and in case of death to pay a stipulated sum to such person or persons as may be designated by each member." This fund, payable on the death of a member, is known as the beneficiary fund, and is created by the payment by the members of specified sums of money as dues, and on the death of a member assessments are made on the members for certain sums of money to pay the death loss of $2,000. When there is a grand lodge in any state, it is obligated to pay, and is charged with the duty of collecting and disbursing, such money. The grand lodge of Iowa had so obligated itself, and was charged with such duty at the time the differences between it and the supreme lodge occurred, as will be presently stated. At a meeting of the supreme lodge, held in Boston in 1880, an amendment to the provisions of the constitution in relation to the beneficiary fund was adopted, and afterwards, at a meeting of said lodge, held in Detroit, in 1882, the provisions so adopted were amended. By the amendments to the constitution so adopted, what is

designated as a relief fund was created for the relief of over-
burdened jurisdictions, and thereby the members of the order
were required to contribute money for the payment of death
losses in other states, and the grand lodge of Iowa was
so charged with the duty of collecting the money of its mem-
bers and remitting the same to the supreme lodge.  A relief
board was created by the supreme lodge, who, under the
authority vested in them, issued "Relief Call No. 1," and
thereby the grand lodge of Iowa was required to collect of
each member under its jurisdiction a named sum for the pay-
ment of death losses in the state of Indiana.  This the grand
lodge declined to do, and thereupon, as the plaintiffs claim,
the "charter of said grand lodge of Iowa" was suspended,
and afterwards a provisional grand lodge was formed under
the authority of the supreme lodge.  Afterwards, certain
subordinate lodges and members of the order, who recognized
the authority of the supreme lodge, through their representa-
tives duly chosen, and claiming to be the grand lodge of
Iowa, met and elected the relators officers of such grand
lodge, and they claim that they are entitled to all the rights
and privileges thereof.  It should also be stated that the sub-
ordinate lodges adhering to what the defendants claim is the
grand lodge of Iowa, through their representatives, at a meet-
ing of the grand lodge recognized by them, denied the
authority of and seceded from the supreme lodge, and by an
amendment to its constitution absolved itself, so far as it
could, from all allegiance to the supreme lodge.

No person can be admitted as a member of the order
unless he is a free, white male, of the full age of 21 years,
and under 50 years old.  He must be of good moral charac-
ter, competent to earn a livelihood for himself and family,
and a believer in the existence of a Supreme Being.  In
addition to which, he must pass a satisfactory medical exam-
ination.  A certificate of membership is issued, whereby the
order obligates itself to pay the sum of $2,000 on the death
of a member, to whomever he may designate, provided all

the rules and regulations of the order have been complied with.

The petition states "that one of the principal objects and functions of said association is to secure to each member thereof the payment, on his death, of the sum of $2,000, subject to the fulfillment of the conditions imposed by the constitution and laws of the association." Counsel for the plaintiffs concede that such pecuniary provision is the same as that secured by ordinary life insurance; but, while this is so, it is contended that the association has no resemblance to any known life insurance company, for the reasons that the relations between such insurance companies and their members are purely business relations, based upon contract, and therefore cannot be changed except by mutual consent. In such associations all that the assured has to do is to pay his dues and assessments; but in this, the right to pecuniary benefits, whether in case of sickness or death, is merely incident to and absolutely dependent upon continued membership in a fraternal society, subject to its laws, present or future, and defeasible by loss or suspension of such membership in any mode or for any cause provided by such laws; such as for immoral and unbecoming conduct, including a malicious or false charge against a "brother." On the other hand, the contention of the appellants is that, in order to determine the primary purpose of the association, reference must be had to the conditions of membership and the business conducted; and it is said that there is no dispute but what the applicant for membership must be insurable; that his application must be accompanied by a physician's certificate to that effect; and that the qualification for membership is made ultimately to depend upon the question as to whether the applicant is insurable, and when he is admitted into full membership a policy of insurance is issued to him, and every member is thus insured; nor can he be a member without keeping his policy in force. If he fails to pay dues and assessments, his membership in the association is forfeited.

We have thus stated at some length the claims of counsel, and their respective statements of facts are in the main correct, and, when the objects of the organization, as stated in the preamble to the constitution, are considered in connection therewith, the conclusion is inevitable that the association has assumed the characteristics of a fraternal organization, and also of a life insurance company. The former, however, possibly predominate; for it is true, we think, that many, if not all, fraternal associations dispense in some form pecuniary benefits, and that purely life insurance companies do not have what is called secret work, a pass-word, or anything of a moral or scientific character, which in any manner affects the organization. Nor do purely fraternal organizations require that the members should be insurable. It is evident that the declared objects of the association should not alone be the controlling consideration, for they may be a mere pretense. To ascertain the primary purpose of this association, reference must be had to the business conducted, the manner of conducting it, and what provisions have been adopted for carrying into effect the several avowed objects of the organization. Doing this, we find that the certificate of membership provides that upon the death of each member there shall be paid to such person as he may designate the sum of $2,000, and that thereunder he or his beneficiary is entitled to nothing more.

Elaborate and stringent provisions are made in relation to the beneficiary fund payable on the death of a member, and for collecting and enforcing the payment of such amounts as are assessed on each member; but we have been unable to discover any provision for enforcing any of the other declared objects of the association stated in the preamble to the constitution of the supreme lodge, including "sick benefits." If the provisions of a fraternal character be eliminated from the association, its primary and only purpose is that of a life insurance organization. *State v. Bankers' & Merchants' Mut. Ben. Ass'n*, 23 Kan., 499; *Folmer's*

*Appeal*, 87 Pa. St., 133; *Ill. Mason's B. Soc. v. Winthrop*, 85 Ill., 537; *Same v. Baldwin*, 86 Ill., 479; *State v. Citizens' Ben. Ass'n*, 6 Mo. App., 163; *Bolton v. Bolton*, 73 Me., 299.

We are satisfied, from an examination of the record, that the primary object and purpose of the association of the Ancient Order of United Workmen is to provide a beneficiary fund to be paid upon the death of each member, and that the avowed fraternal character of the association is merely incidental thereto. In fact, we go further than this, and from the record find that one of two things is true; that is to say, either the fraternal objects of the association as avowed have been abandoned, or they never were intended to be enforced. We find no evidence of their enforcement, or that they were ever regarded as material by the members of the association; while, on the other hand, the provisions in relation to the beneficiary fund have been enforced, and the accumulation and payment of such fund has been regarded as the object and purpose of the association. Therefore it must be regarded as a life insurance organization, and within the provisions of the statute which provides that "no foreign life insurance company, aid society, or association for the insurance of the lives of its members, and doing business on the assessment plan, shall be allowed to do business in this state, unless it has a guaranteed capital of not less than one hundred thousand dollars in the state in which it is organized." Code, § 1160.

The supreme lodge is a Kentucky organization, and its business and primary purpose is life insurance; and, under the foregoing statute, it is immaterial whether it is incorporated or not, for in either case it cannot do business in this state, for the reason that it has not the requisite guaranteed capital. If it is incorporated in Kentucky, as we think it is, and it has been so held, then, for other reasons, it cannot enforce the so-called relief law in this state for the purpose of relieving overburdened jurisdictions. Instead of stating the reasons at length, we refer to the following adjudicated

cases: *Lamphere v. Grand Lodge A. O. U. W.*, 47 Mich., 429; *Grand Lodge A. O. U. W. v. Stepp*, 14 Pittsb. Leg. J., 164. Our conclusion is that the grand lodge of Iowa was not bound to obey the mandates of the supreme lodge in relation to the relief law. It therefore follows that the circuit court erred in not directing the jury to find for the defendants, and in directing a verdict for the plaintiffs.

REVERSED.