ROSALTHA GRIMES v. THE NORTHWESTERN LEGION OF HONOR, Appellant.

**Fraternal Insurance:** CONSTRUCTION OF STATUTES. Under McClain's Code, section 1733, which provides, that a failure to attach copy of an application, made part of a policy, to that policy, applies to a fraternal and benefit association, which dispenses with medical examination unless a benefit certificate is desired, and requires members who obtain such certificates to pay assessments, based on age, and to pay additional assessments when their members die, and which issues a certificate agreeing to pay the sum upon death, if said conditions are complied with by the member, such an association has the dual nature of being a fraternal society and an insurer.

SAME. Acts Twenty-first General Assembly, chapter 65, provides that mutual benefit societies and corporations, doing the business of paying death losses, by assessing its members, shall not be subject to the general insurance laws, and section 21, of the Act, applies this exemption to all secret fraternal societies, who have complied with the act. *Held*, a body which is both a fraternal society and an insurance association, and which has not complied with them, is not by these acts relieved from the consequences attached, by said section 1,733, to a failure to attach a copy of the application.

| 97 | 315 |
| 103 | 248 |
| 97 | 315 |
| 113 | 725 |
| 97 | 315 |
| 115 | 451 |
| 97 | 315 |
| 129 | 663 |
| 97 | 315 |
| 131 | 375 |
| 97 | 315 |
| 139 | 449 |

ON REHEARING. The general effect to be given said section 21, is not involved, and the construction given is confined to what it should be under the facts of the case.

*Appeal from Iowa District Court.*—HON. M. J. WADE, Judge.

FRIDAY, OCTOBER 25, 1895.*

ACTION at law upon a certificate of membership in the defendant company, issued to Martin L. Grimes, in which plaintiff is the beneficiary. The district court sustained a demurrer to the defendant's answer, and defendant appeals.—*Affirmed.*

*Hedges & Rumple* for appellant.

*S. H. Fairall* for appellee.

DEEMER, J.—This is an action at law upon a certain certificate of membership in the defendant company,—a corporation organized under the laws of this state,—issued to one Martin L. Grimes, in which the defendant, upon compliance with certain conditions upon the part of Grimes, promised and agreed to pay out of its benefit fund to the plaintiff, Rosaltha Grimes, a sum not exceeding two thousand dollars. The petition alleges that the defendant is a mutual life insurance company, incorporated under the laws of Iowa, and was, and is, operated on the mutual, co-operative plan, for the purpose of furnishing its members with life insurance; that its objects were, and are as follows: "(1) To unite fraternally all white persons of good moral character, who are socially acceptable, of sound bodily health, and between eighteen and fifty-five years of age, and whose occupation is not extra-hazardous. (2) To improve the conditions of

*NOTE—Owing to the granting of a rehearing, the original opinion in this case was not filed until February 11, 1896.          REPORTER.

its members, morally, socially, and materially, by timely
counsel, by encouragement in business, by assistance
to obtain employment when in need, and to provide
for and comfort the sick and distressed members of
the order.   (3) To establish a benefit fund, from which,
on the satisfactory evidence of the death of a member
of the order who has complied with all its lawful
requirements, a sum not exceeding three thousand
dollars shall be paid to the family, orphans, or depend-
ents, as the member may desire.   (4) To establish a
reserve fund, from which benefits shall be paid from
time to time as the grand council, while in regular
session, may direct, and as provided by the laws of
the grand council." It further alleges the issuance
and delivery on August 30, 1893, of a certificate of mem-
bership by the defendant company to Martin L. Grimes,
as before referred to.   It also avers that on October 7,
1893, said Martin L. Grimes died; that he had fully
complied with all the rules and regulations of the
defendant company, and was in good standing at the
time of his death; that notice and proofs of death were
given defendant as required by the certificate.   The
defendant, in answer, denied that it is a mutual life
insurance company, and that it is operated on the
mutual co-operative plan, for the purpose of furnish-
ing its members with life insurance.   It avers that it is
a secret, fraternal institution, of a benevolet and char-
itable character, incorporated under the laws of this
state in the year 1884; that it has never complied with
the law (Acts Twenty-first General Assembly, chapter
65), in reference to mutual insurance companies, doing
business on the mutual, assessment, co-operative, or
natural premium plan; and that its business and
objects are as defined in its articles, which are set
forth in the petition.   It states that its members are
honorary and beneficial, the first being restricted to
wives, husbands, brothers, and sisters of beneficial

members, and that good character and social standing
is a pre-requisite to membership, either honorary or
beneficiary; that the laws of the society provide for
investigation and report of a committee on the charac-
ter of the applicant, and the question is submitted to a
vote of all members present, of the council which appli-
cant desires to join; that its laws provide for a relief
committee, whose duty it is to visit the sick or disabled,
and report at each stated session; that the laws also
provide for benefits in case of sickness, after any mem-
ber shall have been six months in good standing.  It
further alleges that about August 27, 1893, said Martin
L. Grimes made application for membership in defend-
ant company, and at the time made answers to certain
interrogatories therein contained, which were false and
untrue; that these statements were, by the terms and
conditions of the application, made part of the contract
between the member and the association, and were
warranties on the part of Grimes; and that Grimes
well knew that the statements and representations
made in said application for insurance were false.  A
copy of the application is attached to the answer.
Thereafter plaintiff filed an amendment to her petition,
setting forth the constitution and by-laws of the
defendant, in addition to the articles of incorporation,
and then filed a demurrer to the answer, based upon
the ground that, as no copy of the application was
attached to, or indorsed upon, the policy or certificate
declared on, the alleged false statements or rep-
resentations or breach of warranty, was no defense to
the action.  The court sustained this demurrer, and
rendered judgment for plaintiff, and defendant appeals.

McClain's Code, section 1733 (Acts Eighteenth
General Assembly, chapter 211, section 2), so far as
material, is as follows:  "All insurance companies or
associations shall, upon the issue or renewal of any
policy, attach to such policy or indorse thereon, a true

copy of any application or representations of the assured, which, by the terms of such policy, are made a part thereof, or of the contract of insurance, or referred to therein, or which may, in any manner, affect the validity of such policy. The omission so to do, shall not render the policy invalid, but if any company or association neglects ·to comply with the requirements of this section, it ·shall forever be precluded from pleading, alleging, or proving such application or representations, or any part thereof, or falsity thereof, or any parts thereof, in any action upon such policy. * * *" Defendant's counsel urge two propositions as decisive of the case at bar: (1) They insist that defendant is not a life insurance company, but they say it is a secret, fraternal society or institution, of a benevolent and charitable character, and that the provision of McClain's Code, before quoted, is not applicable to it. (2) They contend that, if it should be held that it is a life insurance company, it is not such a one as is contemplated in the aforesaid statute, and that this act of the general assembly, requiring a copy of the application to be attached to, or indorsed upon the policy, has no application to the case.

I. Our first inquiry will be with reference to the character of the defendant. It was incorporated under the general incorporation laws of this state, in the year 1884, for the objects stated in the petition; and the articles also provided that it should have certain fraternal forms and ceremonies, and should be a fraternity or secret society. The trustees, directors, or managers were to be known and designated as "grand commander," "grand vice commader," "past grand commander," "grand secretary," "grand treasurer," "grand chaplain," "grand guide," "grand warden," "grand sentinel," "three grand trustees," and a medical examiner in chief. The constitution of the grand council declared the object of the

order to be about as stated in the articles of incorporation. It provided for a grand council, and who should compose it; named the officers, their terms, duties, etc.; provided for passwords for subordinate councils; recognized the secret work of the order; and provided for visitation by grand officers for instruction in the secret work. It provided for the instruction of councils under the authority of the grand officers; named and defined the duties of subordinate officers; required the instituting officers of new councils to instruct and exemplify secret work; provided for expulsion from the order for revealing any of the secrets, grips, etc. Applicants for membership were required to be white people, of good moral character and socially acceptable. No medical examination was required, as we understand it, unless one desired to take a benefit certificate. One of the declared objects of the association was to improve the condition of its members, morally, socially, and materially, by encouragement in business, assistance to obtain employment when in need, and to provide for and comfort sick and distressed members. Provision was also made for trial and expulsion of members for certain offenses. In addition to all this, and many other matters which might be mentioned, a third object of the association was to establish a benefit fund, from which, on satisfactory proof of death, a sum not exceeding three thousand dollars should be paid to some one of the member's family, as he might direct. This was to be accumulated by mutual contributions, or assessments, based upon the age of each member, on a regular scale, to be established from time to time. A rigid medical examination was required of proposed members. On admission, each member was required to pay the medical examiner's fee, together with the amount of one assessment,—the assessments being fixed in the

by-laws,—based upon the age of the member.   Additional assessments were required to be paid from time to time, on death losses, and it was further provided that, when one regular assessment upon each member did not amount to three thousand dollars, what was called an "emergency benefit. fund" might be called. The association also agreed to pay, upon the death of a member, a certain amount, varying from one thousand dollars to three thousand dollars, depending upon the class to which the member belonged, provided that, should a death occur when one regular assessment upon each member, less the reserve fund, together with the emergency fund, would not amount to three thousand dollars, then the sum to be paid should be a proportionate amount of one regular assessment upon each member in good standing in the order at date of death, together with the emergency fund, according to the class of the member, and such amount is all that can be claimed by any one.   According to the by-laws, one-fifth of each assessment was to be transferred to the reserve fund, and this fund was required to be invested, and could not be used in payment of beneficiary claims, unless by vote of three-fourths of the members of the grand council.   The association, as we have seen, issued certificates of membership, in which it agreed to pay the beneficiary a sum not exceeding a certain amount, upon conditions not necessary to be here stated.   We have set forth enough, with reference to the character of this organization, to demonstrate that it is dual in nature.   Its professed objects are fraternity, benevolence, and charity, and, in addition, a more substantial feature, in which it promises to pay a certain sum, upon the death of a member, to the beneficiary. It has many features common to mutual benefit societies, and, if the secret part were divorced from the beneficial, it would very clearly be a mutual

benefit society, pure and simple. With the secret, the fraternal, and the charitable part of the society we have nothing to do. This action is to recover a sum of money, claimed to be due, on contract, to the beneficiary of one of the beneficial members, and it is of its character as a beneficial society, or business organization, that we are to inquire. It is well settled that, in dealing with such societies, very different rules apply, and varying conclusions will be reached, as we consider one class of objects, or the other. Looking, then, to the beneficial part of this organization, its objects and purposes, we think it manifest that its business, in form and substance, is life insurance, although not based upon the ordinary principles underlying the philosophical theory of life insurance. It is based almost wholly on assessments, levied from time to time, as occasion may require, and is a cheap form of insurance. There is here an agreement, for a a consideration, viz:, the assessment paid, and to be paid, by which one party promises to make a certain payment of money, upon the death of another, to a beneficiary, who is named in the certificate. As said by Gray, J., in *Com. v. Wetherbee*, 105 Mass. 149, "All that is requisite to constitute such a contract is the payment of the consideration by the one, and the promise of the other to pay the amount of the insurance, upon the happening of injury to the subject, by a contingency contemplated in the contract." This is insurance, as defined by the courts. If this be it, then, clearly, defendant is an insurance company. That an association may have this dual character, is well settled by authority. See Bac. Ben. Soc. sections 1–14, and *State v. Miller*, 66 Iowa, 26 (23 N. W. Rep. 241). It seems to be equally well settled that, as a benefit society, it is an insurance company. May, Ins. section 550a; Bac. Ben. Soc. sections 51, 52; Nibl. Mut. Ben. Soc. sections 163–165; *State v. Miller, supra;*

*State v. Nichols*, 78 Iowa, 747 (41 N. W. Rep. 4); *Assurance Fund v. Allen* (Ind. Sup.) (7 N. E. Rep. 317); *Supreme Lodge v. Knight* (Ind. Sup.) (20 N. E. Rep. 479); *State v. Standard Life Ass'n*, 38 Ohio St. 281; *Prader v. Association*, 95 Iowa, 149 (63 N. W. Rep. 601). We think defendant is a life insurance company, and that it is governed by all the laws of this state relating to life insurance, unless there can be found something in the statutes exempting it from the operation of these laws, and particularly the law with reference to attaching a copy of the application to its certificates; and this brings us to the second question discussed by counsel.

II. It is contended that, while the language used in section 1733, of McClain's Code, may be broad enough to cover the defendant company, yet that, when this statute is construed with other provisions of the law, it is apparent that the legislature did not intend it to apply to such companies as the defendant. A very able and ingenious argument is made by appellant's counsel upon this proposition. Resort is had to the contextual argument. We have a statute (section 2372, of the Code), which exempts the avails of life insurance from the debts of the deceased. Originally, the act read: "The avails of any life insurance * * * are not subject to the debts of the deceased." The Eighteenth General Assembly amended the law, by adding after the word "insurance," "or any other sum of money, made payable by any mutual aid or benevolent society, upon the death of a member of such society." Acts, 1880, p. 5. Claim is made that the legislature understood that benefit societies were not insurance companies, else this amendment would not have been made. Whatever of force there may be in this suggestion, is met by the fact that section 1182, of the Code, providing for the exemption of a policy of life insurance from

execution, which is in *pari materia,* was not amended. Moreover, if there were no such materializing fact, we would hesitate before placing the construction asked upon the words, "all insurance companies," in section 1733, of McClain's Code, because of the amendment to section 2372. The words used are unambiguous; are broad, comprehensive, and significant; and the rule commending consideration of the context, is subject to the qualification that, if the meaning of the words can be found in the section itself, it ought to be there sought, without recourse to anything beyond. The beneficial purpose of the statute under consideration, is so manifest, the object of the provision so apparent, and the results so salutary, when applied to any form of insurance in which an application is attempted to be made a part of the policy, that we think the legislature, by the use of the words, "all insurance companies or associations," intended to cover every form of insurance. Indeed, we have already held, that notwithstanding the fact that the act was found in the arrangement of the Annotated Code, under the head of "Fire Insurance," and the further fact, that the marginal notes and headings referred to it as relating to fire insurance, yet it was applicable to life, as well as fire insurance companies. *Cook v. Association,* 74 Iowa, 746 (35 N. W. Rep. 500). And in the cases of *Newman v. Association,* 76 Iowa, 56 (40 N. W. Rep. 87), and *McConnell v. Association,* 79 Iowa, 757 (43 N. W. Rep. 188), we held that the provisions of the act were applicable to all kinds of insurance and policies, including those issued by mutual benefit associations upon the assessment plan. In the year 1886, the legislature passed an act (Twenty-first General Assembly, chapter 65) regulating the organization and operation of mutual benefit societies, providing that before commencing business, they shall adopt articles of incorporation, setting

forth the plan of business, which shall be submitted to the auditor of state and attorney general, for approval, and containing various other provisions with reference to the conduct of the business. Section 20, of the act, provides that, "any corporation, or association, doing business in this state, which provides in the main for the payment of death losses * * * by any assessment upon its members, or upon the natural premium plan, shall, for the purpose of this act, be deemed a mutual benefit association, and shall not be subject to the general insurance laws of this state, regulating life insurance. * *. *" Section 21: "Nothing in this act shall be construed to apply to any secret fraternal society, nor any association organized solely for benevolent purposes, and composed wholly of members of one occupation, guild, profession or religious denomination, provided, that any such society or organization named above in this section, shall, by complying with the provisions of this act, be entitled to all the privileges, and be amenable to the obligations of this act." The defendant, in answer, pleads affirmatively that it has never complied with the provisions of said chapter 65, and it certainly is not incorporated under that statute. It was organized prior to the enactment of this law, and never re-incorporated thereunder if, indeed, it was required to do so. No doubt, the reason of it was that it considered itself a secret fraternal society, organized solely for benevolent purposes, under the provisions of section 21, before quoted. But, as we have seen, it is not such society,—that is, it is such, but more; it is also an insurance company. It seems to be organized under title 9, chapter 2, for the purpose of doing the business contemplated by section 1160, of the Code. The question then is, is it, by section 20, chapter 65, Acts Twenty-first General Assembly, relieved from the operation of

section 1733, of McClain's Code, with reference to attaching copies of the application to its certificate or policy? The question seems to be squarely decided, adversely to appellant, in *McConnell v. Association*, 79 Iowa, 760 (43 N. W. Rep. 188). It is insisted, however, that the point here presented, was not raised in that case. We think it was directly involved, and squarely decided. But, if this be not so, it is quite clear that section 20 relates to insurance companies or benevolent societies, which are organized and operating under the provisions of the act. Unless it was so organized, or is so operating, it is certainly not entitled to the benefits of section 20. Whatever may be the true rule with reference to companies or associations organized and operating under the Acts of the Twenty-first General Assembly, we think it clear that, as defendant is not so organized or operating, it cannot claim the benefits thereof. It is no answer to say that it is prohibited from doing business, except it be done under this act, for it admits that it has not complied with its provisions, and is not operating thereunder. Again, it is only for the purpose of Acts Twenty-first General Assembly, chapter 65, that corporations are to be deemed mutual benefit associations, and not subject to the general insurance laws of the state. The purpose of the act was to regulate the organization and operation of such mutual benefit societies as should comply therewith. There is no express repeal of section 1733, of McClain's Code, and such companies, and such only, as are organized, or are operating under Acts Twenty-first General Assembly, chapter 65, are relieved from the operation thereof. The question presented seems to be ruled by the *McConnell Case*, before cited, and what we have said is simply an amplification of the reasons supporting the doctrine.

From what we have said, it is apparent that our views are in harmony with those of the learned district judge, and the judgment is *affirmed*.

FEBRUARY 11, 1896.

ON petition for rehearing.—*Denied.*

DEEMER, J.—A petition for rehearing has been filed in this case which, among other things, challenges the statement that the defendant is something more than a secret fraternal society, as that term is used in section 21, chapter 65, of the acts of the Twenty-first General Assembly. In view of this, and to correct any wrong inferences that may be drawn from some of the language used, it is thought advisable to file this supplement. What is said in the opinion with reference to this subject, had relation to the facts as stated, and alluded solely to the question of the necessity of attaching copies of the application to the certificate of membership or the policy of insurance. We held that the defendant was organized and is acting in a dual capacity; that it had entered into a contract of insurance; and that there is nothing in chapter 65, Acts Twenty-first General Assembly, absolving it from the terms of the general law, (McClain's Code, section 1733), requiring it to attach copies of the application to the policy. We also held that, if it be conceded that it was acting under the said acts, it was still required to attach these copies, in order to rely upon any misrepresentations made by the assured, following the *McConnell Case*, 79 Iowa, 757 (43 N. W. Rep. 188), and that, if it was not so acting, it followed that it was acting under the general law, and, if so acting, it was clearly subject to the provisions of section 1733 of McClain's Code. It was

unnecessary to determine what the intent of the legislature was in enacting section 21 of the act in question, for, in any event, defendant had entered into a contract of insurance, and was an insurance company, within the meaning of section 1733. The effect to be given section 21, was not a controlling question, and what is said in the opinion regarding it should be limited by, and construed in the light of, what is here said regarding the case. We are content with the conclusions reached, and with the modifications here suggested, the opinion is adhered to.