NEWMAN v. THE COVENANT MUTUAL INSURANCE ASSOCIATION.

1. **Pleading:** AMENDMENT : CHANGE FROM LAW TO EQUITY : LIMITATION OF ACTION : LIFE INSURANCE. The policy of life insurance declared on provided that no action thereon could be maintained unless begun within one year after the death of the insured. The action was brought as an action at law within that time, and the petition set up all the facts entitling plaintiff to relief; but the relief which he was entitled to was equitable and not legal. (See 72 Iowa, 242.) After the lapse of more than a year, and after this court had reversed a judgment in his favor, plaintiff amended his petition so as to demand the equitable relief to which this court held him to be entitled. *Held* that such amendment was germane to the original petition, and was properly allowed, and that the action dated from the time the original petition was filed, and not from the date of the amendment. (See opinion for cases and statutes cited.)

2.  Life Insurance : BENEFICIARIES : REFORMATION OF POLICY :
    HARMLESS ERROR.  The policy declared on was made payable to the
    devisees of the insured " as designated in his last will and testa-
    ment."  But he died intestate, and the trial court reformed the
    policy, on account of alleged mistake, so as to make the wife of the
    insured the sole beneficiary.  *Held* that, if this was error, defend-
    ant could not complain of it, because the widow and heirs of the
    insured, to whom the money would go in the absence of a will, had
    joined in an assignment of the policy to plaintiff as trustee.

3.  ———: WAIVER OF CONDITIONS : ACTS OF AGENT.  The policy
    declared on, as well as the application therefor, provided that if
    the insured should use alcoholic liquors so as to injure his health,
    the policy should be void ; and another clause of the policy provided
    that the company might cancel the policy if it found that the
    insured did so use alcoholic liquors.  But the agent who took and
    forwarded the application, and who later received the premium,
    knew all the time that the insured was a habitual drunkard.  *Held*
    that there was a waiver of these conditions of the contract, and
    that the habitual drunkenness of the insured would not defeat a
    recovery on the policy.  But these facts did not amount to a waiver
    of another condition, to-wit, that the policy should be void if the
    insured died from the effects of intoxication, or while intoxicated.

4.  ———: ASSESSMENT PLAN : REFUSAL TO LEVY : LIABILITY OF
    COMPANY.  Where a life insurance company on the assessment
    plan, though a foreign corporation, refused to obey the order of a
    court of this state to make an assessment to pay a loss which
    occurred six years prior, *held* that, since proceedings in contempt
    against the non-resident officers would have been futile, a judg-
    ment against the corporation for the amount of the policy, with
    interest thereon from the time it should have been paid had an
    assessment been made in the regular course of business of the
    company, was the proper relief.

*Appeal from Linn District Court.*—Hon. J. H.
Preston, Judge.

Filed, October 26, 1888.

The defendant is a life insurance company, organized
under what is known as the " Assessment Plan."  On
the eighth day of July, 1882, it issued a policy or certifi-
cate of membership, as it is denominated, to W. H.
Hewitt, a resident of the city of Marion, in this state.
On the morning of the fourteenth of July, 1882, the
dead body of Hewitt was found in a ditch in the city of

Omaha. The ditch was about twenty-four feet wide, and there was water in it to the depth of three and a half or four feet. He left surviving him a widow and two or three children. They assigned the claim, founded upon the policy of insurance, to the plaintiff herein. An action at law was commenced thereon, and a trial had, which resulted in a judgment for the plaintiff. An appeal was taken to this court, and the judgment was reversed. (72 Iowa, 242.) After the cause was remanded to the district court, the plaintiff amended the prayer of his petition, by which equitable relief was demanded. Afterwards he filed an amended and substituted petition in equity, by which he demanded that the defendant proceed to make an assessment upon the membership in the association, and collect the money and pay off the policy. A hearing was had, and a decree was entered, ordering an assessment to be made, and a report thereof to be made to the court. The cause was continued. At the next term it was made to appear that the defendant had made no assessment. A supplemental petition was filed, demanding judgment against defendant for failure to make the assessment. A demurrer to the supplemental petition was overruled, and a judgment was entered for the full amount of the policy, the same being five thousand dollars, and for interest thereon from the time the same should have been paid if an assessment had been made in the regular course of the business of the company. The defendant appealed from the decree ordering the policy to be paid by assessment, and from the final judgment rendered on the supplemental petition.

*W. C. Calkins* and *F. C. Hormel*, for appellant.

*Chas. A. Clark, Henry Rickel* and *E. H. Crocker*, for appellee.

ROTHROCK, J.—I. The opinion of this court on the former appeal of the cause will be found in 72 Iowa,

**1. PLEADING: amendment: change from law to equity: limitation of action: life insurance.** 242. It was held upon that appeal that an action at law for the amount named in the policy or certificate could not be maintained ; that, by the terms of the contract, the defendant's obligation was to make an assessment upon the members of the association, collect the assessment and pay it to the beneficiary ; and that no more than nominal damages could be recovered in an action at law. When the cause was remanded to the district court, and when the amended and substituted petition in equity was filed, the defendants moved to strike out the petition, and demurred thereto. The motion and demurrer were overruled. The question arising upon these rulings of the court is elaborately argued by counsel. It is an important question in the case. If there was no right to amend the pleadings so as to present an action in equity, instead of one at law, and if the amendments set up an entirely new action, it could not be maintained, because the policy or certificate, which is the basis of the suit, expressly provides that no action can be maintained thereon which is not commenced within one year after the death of the insured. The statute of this state, authorizing the amendment of pleadings, is very comprehensive. Code, sec. 2689. Under this and other sections of the Code it has become the rule to allow amendments, and to deny the right is the exception. When this cause was remanded to the district court there was the same right of amendment as there would have been if it had not been tried. It was one of those cases where an amendment to the petition was absolutely necessary. In the opinion of this court, the plaintiff should have demanded an assessment upon the membership of the association, instead of asking a judgment at law. It was no more than an amendment of the prayer of the petition. If the claim was an honest one, and the defendant refused to make an assessment to pay it, there was a breach of the contract for which it was liable. The plaintiff sought a recovery upon the policy. He set out in his petition and amendments thereto, before the first trial, every fact necessary to show that he was entitled to relief in some form. He

made the mistake of demanding a judgment for the amount, when he should have demanded that an assessment be made. If the objection to his petition had been made before the trial, it was his right to have his cause changed into the proper proceeding, and to amend the prayer of his petition accordingly. The error in claiming a judgment did not abate the action. Code, sec. 2514. By the amendments there was no change of the cause of action. If the plaintiff, when the cause was remanded, had sought to amend his petition by declaring upon the breach of a contract of insurance against loss by fire, that would have been a new cause of action. It would not have been an amendment. The cause of action in this case was the breach of the contract of insurance, and the amendment was merely a change of the form of the remedy. The right to make these amendments, by which causes are changed from the law to the equity jurisdiction of the court, and *vice versa*, have been too long practiced in our courts to be now called in question. As sustaining the views above expressed, see *Holmes v. Clark*, 10 Iowa, 427; *Weaver v. Kintzley*, 58 Iowa, 193; *Emmet County v. Griffin*, 73 Iowa, 163; *Case v. Blood*, 71 Iowa, 632; *Barke v. Early*, 72 Iowa, 273; *Barnes v. Hekla Fire Ins. Co.*, 75 Iowa, 11; and *Cook v. Chicago, R. I. & P. Ry. Co.*, 75 Iowa, 169. We have not thought it necessary to review the authorities cited by counsel for appellant upon this question. It is a question of pleading, which we must regard as settled in this state. The original petition was filed within a year after the insured died, and neither the limitation in the policy, nor the limitation of the statute, can be invoked as defenses to the action.

II. The certificate held by the deceased was made payable to the "devisees of Wm. H. Hewitt, as designated in his last will and testament." When

2. LIFE insurance: beneficiaries: reformation of policy: harmless error.

the plaintiff filed his amended petition in equity, he pleaded that the designation of the beneficiaries in the certificate was a mistake, and it was prayed that the same be reformed so as to be made payable to A. E. Hewitt, his

wife, in conformity with the intention of the parties. The decree reformed the instrument as prayed. It appears that the deceased left no last will and testament, and there were therefore no devisees. It is claimed that there was not sufficient evidence to warrant the reformation of the contract. We need not determine this question. It appears that the widow of the deceased and all of his heirs assigned the policy to the plaintiff. Surely the defendant ought not to seek to avoid its obligation by the alleged failure of a beneficiary. In such case the heirs of the deceased are the beneficiaries. If he made no last will and testament, the right to the avails of the life insurance would descend to his heirs the same as any other property or chose in action. *Smith v. Cov. Mut. Ben. Ass'n*, 24 Fed. Rep. 685 ; *Cov. Mut. Ben. Ass'n v. Sears*, 114 Ill. 113.

III. We come now to a consideration of the facts in the case. The defendant is a corporation, and its place of business is at Galesburg, in the state of Illinois. The deceased was a resident of Marion, in this state, where he kept a hotel. The application for the insurance was taken in June, 1882, by one W. H. Wharry, an agent of the defendant. He had been at Marion for several weeks before the application was made, engaged in taking applications for insurance for the defendant. It does not appear that he had any other business. He boarded at the hotel kept by the deceased. Fifteen dollars was necessary to be paid by the deceased to constitute him a member of the association. When the application was made by an arrangement between Wharry and the deceased, five dollars of this amount was paid by a credit upon the account against Wharry for his boarding, and the deceased gave Wharry his promissory note for ten dollars, dated June 15, 1882, and payable July 15, 1882. Wharry changed the scene of his operations to Sycamore, Ill., and sent the note to a bank at Marion for collection, where it was paid July 15, 1882, and the amount, with the proceeds of two other notes taken for insurance, was sent to him. It appears that the

*Margin note: 3. ——: waiver of conditions : acts of agent.*

deceased was addicted to the excessive use of intoxicating liquors. He had acquired this habit years before he died. The testimony of a large number of witnesses was taken upon this feature of the case, from which it appears that his drunkenness was noticeable to every one who observed him. It is not disputed that he was a confirmed drunkard. Wharry knew this fact perfectly. He not only could not have failed to know it by observation, but the defendant had two medical examiners at Marion, and one of them told Wharry before he took the application that the deceased was not a proper subject for insurance, because of his habits. With this knowledge Wharry took the application after a medical examination by the other examiner. The defense upon the facts is based upon the intemperate use of alcoholic beverages. The application contains the usual stipulations, agreeing that the contract should be void if the insured should habitually use alcoholic drinks, liable to injure his health, and that, if at any time he should impair his health by the excessive use of liquors, the contract should be void, and might be so deemed by the association. This application was not indorsed upon the policy, and for that reason no defense can be founded upon alleged false and fraudulent answers and statements in the application. Acts 18th Gen. Assem., ch. 211; *Cook v. Federal Life Ass'n,* 74 Iowa, 746. But the defendant claims that by the very terms of the certificate or policy in suit it became void, and of no effect. It is provided therein, or, rather, indorsed on the back, and made part of the certificate, that, if the assured "shall use alcoholic, narcotic, or other stimulants to such an extent as to injure his or her health, or produce *delirium tremens,* or shall die while intoxicated, or from the effects of drunkenness, * * * the certificate shall be void, and of no effect." This being a part of the policy, the defendant has the right to avail itself of it as a defense so far as applicable to the facts of the case. But there is another provision of the policy, which is as follows: "If at any time during the life-time of the holder of this certificate

reliable information, and evidence shall come to the knowledge of the association that the said holder of this certificate did conceal facts which should have been stated, or did make false or untrue statements or representations in his or her application, on the good faith of which this certificate was issued, or if the said holder of this certificate shall be guilty of any criminal act, or shall injure or impair his or her health by immoral practices, or by the use of alcoholic, narcotic, or other stimulants, or shall become an habitual or excessive user of stimulants, have *delirium tremens*, or shall violate any one of the conditions and agreements contained in the application or this certificate, the association may, by written notice signed by its president or secretary, cancel and annul this certificate ; and when so cancelled and annulled, or rendered null and void by the violation of any part of this contract, all moneys which have been paid, and all rights and benefits which may have accrued, shall be absolutely forfeited.'' The two clauses of the certificate are not necessarily repugnant to each other. By the last clause it was the right of the defendant to cancel the certificate when it came to its knowledge that the defendant made false or untrue statements in his application, or indulged in intoxicating liquors so as to injure or impair his health. The certificate was not issued in reliance upon the good faith and truth of the application. The defendant did not issue the policy relying upon the representations made in the application. Its agent knew that the statements contained therein as to the decedent's habits were not true. With this knowledge upon the part of the agent, he forwarded the application, and, instead of recalling it, not only allowed a certificate to issue, but collected the money in payment therefor. How long he remained as a boarder at the hotel does not appear. If he remained at all, he knew that the deceased did not reform. We think it ought to be held that, as the defendant issued the certificate, knowing the decedent's habits, and afterwards received the premium without cancelling the policy, it should be held to have

waived .the other provision rendering the policy void for the very same conduct of the deceased for which it had the right to rescind.    Upon this question, see *Insurance Co. v. Hazelett,* 105 Ind. 212, 4 N. E. Rep. 582.

IV.   The only question of fact remaining to be determined is, did the assured die from the effects of intoxication, or while intoxicated? The THE SAME. waiver of the right to cancel the policy did not waive that part of the contract by which the policy should be void if the assured died from the effects of intoxication or while intoxicated.   The burden of proving this issue was upon the defendant.   It is not claimed that the deceased was continually intoxicated. He left his home at Marion in a sober condition.   He drank on the way, and when he arrived at Council Bluffs he was very much intoxicated,—so much so that the conductor of the train left him in the car in which he made his journey, and which arrived at Council Bluffs at one or two o'clock in the morning.   The next known of him was that he registered his name at a hotel in Council Bluffs on that morning.   He was next seen in the evening, at Omaha, and near the ditch where he was found dead the next morning.   There was water in the ditch to the depth of three or four feet, and the bottom was soft mud.   A witness for the defendant, who claims to have seen him at six o'clock in the evening, not far from the ditch, testified that he walked like a drunken man.   It does not appear at what time in the evening or night he was drowned.   As the inquiry is confined to his actual condition when he was drowned, we are not prepared to say that the learned judge who determined the case upon the last trial should have found that the defendant established this issue.   There are some circumstances in the case tending to show that the witness who testified that he saw the deceased in the evening was mistaken in identifying him as the person who was drowned.   There are marked discrepancies in the description of the man seen by the witness and the deceased.

These discrepancies pertain to the hat, clothing and whiskers worn by the person seen by the witness.

V. As has been stated, the defendant refused to make the assessment ordered by the decree of the court. This decree was entered January 5, 1888, and the defendant was ordered to make return of its doings in that behalf by the first day of the next term to which the cause was continued. On the fifth day of April, 1888, it being the March term of said court, a supplemental petition was filed, in which the decree of the former term was recited, and it was therein alleged that the defendant had disregarded and defied said decree by neglecting and refusing to make any assessment whatever, and that by reason thereof the plaintiff was unable to realize anything upon said certificate, and that defendant has a large amount of assets and property, and praying for a judgment for the amount of the certificate, with interest from the time an assessment should have been made before the suit was first instituted. A demurrer to this supplemental petition was overruled. The defendant stood on its demurrer, and the court, upon the record before it, and without the introduction of further evidence, entered judgment as prayed in the supplemental petition. It is claimed that this judgment is erroneous, and that the only power possessed by the court was to punish the officers of the company for contempt in disobeying the order to make the assessment. We think the judgment was not erroneous. It may be that the officers of this association honestly believed when proofs of loss were made that the association was not liable, or, rather, was under no legal obligation to make an assessment to pay the loss. The record shows that they were in error in refusing to provide for the payment of the loss. They postponed it for nearly six years. It is well understood that the membership of these assessment associations is constantly changing; that new members are not assessable for losses which occur before they become members; and

*4. ——: assessment plan: refusal to levy: liability of company.*

that assessments can be made only on the members liable to pay when the losses occur. It appears from the answer of the defendant that when this loss was payable there were at least five thousand members liable to assessment in the sum of one dollar each for the payment of this death-claim. No court, so far as we have observed, has determined just what is the liability of one of these assessment companies. This court, and most of the other courts of the country, have held that an action at law to recover the amount of the policy will not lie. The defendant's position is that, if the officers refuse to make an assessment, the remedy is punishment for contempt, which is a fine of fifty dollars. This is a safe refuge, and, if adopted by the courts, it discharges the corporation from all liability ; and for that matter the court in this case would have been powerless to punish the officers for contempt. They are beyond the jurisdiction of the court, in the state of Illinois. Some one should answer for any shrinkage in an assessment now to be made on account of the delay. The party should suffer for it who is in the wrong, and the defendant is obviously that party. It should make good to the plaintiff what he has lost by its breach of its contract to make an assessment, collect the money, and pay it to the plaintiff. To require less upon the record made in this case would be a license to natural persons to organize corporations as a cover for the grossest frauds. Something is said in argument to the effect that the court had no jurisdiction to enter the decree because the defendant is an Illinois corporation. The proposition is not sound. The defendant was properly brought into court, the decree was a personal decree, and the judgment is a personal judgment. It cannot be enforced by execution by the courts of this state, but, being a personal judgment against the corporation defendant, it will be entitled to full force and credit in the courts of Illinois.

AFFIRMED.