MARIE COLLINS V. THE BANKERS' ACCIDENT INSURANCE COMPANY, *et al.*, Appellants.

**Life Insurance:** POLICY CONSTRUED. Going out on water in a boat
to fish on a dark night, without knowledge that snags are there,
is not an exposure to "unnecessary danger" within a provision in
an accident policy exempting the insurer from liability for
injuries from "voluntary exposure to unnecessary danger."

SAME. Under Acts Twenty-third General Assembly, chapter 34, sec-
tion 6, prohibiting the placing across any body of water of a trot-
line, so as to prevent "the free passage of fish up, down, or
through" such water, to catch fish other than minnows, unless
under the supervision of the fish commissioner, and section 2,
making it lawful to catch fish with hook or line, the placing of a
trot-line across the stream is not an unlawful act, unless so placed
as to obstruct the free passage of the fish up and down the
stream.

ASSESSMENT. An assessment to meet liabilities on a policy in an acci-
dent assessment insurance company must be made on the basis of
membership, at the date of the accident.

Kinne, J., took no part.

*Appeal from Tama District Court.*—HON. JOHN R. CALDWELL, Judge.

THURSDAY, OCTOBER 24, 1895.

Edward Drahos was a member of the defendant company, and as such he held a certificate entitling the plaintiff as beneficiary therein, to five thousand dollars in case of his death by accident. On the thirteenth day of July, 1893, Edward Drahos was accidentally drowned, and this action is in equity to compel the officers of the company to make an assessment upon the membership of the company, in accordance with the terms of the agreement, to pay the amount due. Issue was taken on the petition and on the trial

thereof judgment was given for the plaintiff, and the defendant appealed.—*Modified and affirmed.*

*Guernsey & Bailey* for appellants

*Stiger & Struble* for appellee.

Granger, J.—I.   A ground of defense is that the death of Drahos resulted from a voluntary exposure to unnecessary danger.   Drahos was one of a fishing party camping on the Iowa river.   The party had lines set out with hooks, and Drahos, with one Crossman, took a boat and went out to inspect them.   It was in the night, and dark, and as they were returning the boat struck a limb or tree, in the water, and upset, and Drahos was drowned.   A by-law of the defendant company provides that it shall not be liable for injuries or death resulting from voluntary exposure to unnecessary danger, because of which, and the particulars as to the death of Drahos, defendant urges that the judgment should be reversed.   The party reached the river about 6 o'clock in the afternoon, and before it was dark, and put out their lines. It seems that in the water there were snags and trees, or at least one tree.   The limb that upset the boat was "almost in the water; could hardly be seen."   The snags seem to have been under the water.   From the evidence, we understand that there was nothing observable, by looking at the water, to show it dangerous to go on in a boat.   It does not appear that Drahos knew of the snags, even if he knew of the tree that was partly in sight.   The provision of the certificate containing the clause referred to exempts the company from liability for injuries resulting from dueling, fighting, wrestling, lifting, over-exertion, or riding or driving races, or voluntary exposure to unnecessary danger.   Fishing as a pastime or business, is not included, in terms, and it could not well be said but

that he had a right to go on the water in a boat to fish; that is, such fishing could not be regarded, in itself, as "unnecessary danger." Nor do we believe that the contract contemplates that going in a boat to fish, in a dark night, is such danger, in the absence of other facts. If it be conceded that the place where Drahos was drowned was dangerous, there is not enough to defeat a recovery. Before he could voluntarily expose himself to danger he must know of the danger, and it does not appear that he had such knowledge. The mere presence of a tree did not make it dangerous to go on the water. It does not appear that he knew, when on the water, that he was near the tree, or in danger because of it. Other elements of danger were concealed, or, at least, so much so that we cannot assume that, from observation, while there, he knew of them. It seems to us that the evidence fails to show a voluntary exposure to danger. The case is very unlike *Shaffer v. Insurance Co.* (Ill. Sup.) 22 N. E. Rep. 589, and *Insurance Co. v. Jones,* 7 S. E. Rep. (Ga.) 83. In those cases, and others cited, the facts giving rise to the danger were known, and the party was aware of the risks he was taking.

II. The party with which Drahos was had suspended a line over the river from bank to bank, and had hooks attached thereto, to make what is known as a "trot-line." Drahos and Crossman, when the accident happened, had been to inspect this line and other hooks that had been set out, and were on their way to the shore, and near it, when upset. The following is a section of chapter 34, Acts Twenty-third General Assembly: "Sec. 6. No person shall place, erect, or cause to be placed or erected, in or across any of the rivers, creeks, lakes, or ponds, or any outlets or inlets thereto, any trot-line, seine, net, weir, trap, dam or other obstruction in such a manner as to hinder or

obstruct the free passage of fish up, down or through such water course for the purpose of taking or catching fish unless the same be done under the supervision of the fish commissioner, except minnows, as provided in section 2 of this act." The by-laws of the company also provide that it shall not be liable for death resulting while, or in consequence of, violating the law. The fishing with a trot-line is urged as a defense to a recovery. The law is not against fishing with such a line. It is only against placing such a line in a way to obstruct the free passage of fish. The manner of catching fish is with hook and line. Section 2 of the act defines how fish may be caught. It says: "It shall be unlawful for any person to take from any of the waters of the state any fish in any manner except by hook and line, except," etc. Section 6 is as to obstructing the passage of fish, and there is nothing to show that the trot-line was set in such a way as to obstruct such passage. If from the section we strike the words, "in such manner as to hinder or obstruct the free passage of fish, up, down or through such water course," the section, as to a trot-line, would read as follows: "No person shall place, erect, or cause to be placed or erected, in or across any of the rivers, creeks, lakes or ponds, any trot-line * * * for the purpose of taking or catching fish," etc. The language so used would be absolutely prohibitive of taking or catching fish with a trot-line, and that is the effect claimed for the section. The omitted words are for some purpose, and they so modify the other language as to make the prohibition apply to the use of the trot-line in a particular manner. It is to be borne in mind that the statute is a penal one, and the strictness of construction applicable to such statutes must obtain.

III. The money for the payment of the certificate, by the laws of the company, is to be raised by an assessment on its members, and it is provided that the

amount paid shall be dependent on the amount collected from an assessment made to meet the claim. The death occurred at a time when the membership was comparatively low, appellant fixing the number at two hundred and fifty. The number at the present time, or at the time of entering judgment is much larger. It is urged by appellant that the assessment should be only on the membership at the time of the death. The court gave judgment on the basis of an assessment against all the members. We think that was error. The death of Drahos fixed the obligation of the company on the certificate. If it had then paid, the amount would have been measured by the assessment on the basis of membership at that time. The delay to determine the obligation of the company for the payment of any amount, would not change its obligation, so as to permit an assessment for a greater amount. Nothing in the articles or laws of the corporation justifies the conclusion contended for by appellee. The following language, in *Insurance Co. v. Comfort*, 50 Miss. 662, is directed to the personal liability of members of such a company for payment, and it also bears on the question we determine, of the amount to be raised by assessment to pay the loss. The language is as follows: "The person who effects insurance to-day is not liable for a loss that occurred yesterday. Responsibility to contribute to a loss begins when the insurance has been effected, and terminates when the policy expires." In this case, it is not pretended that the assessment upon a particular member can exceed a certain amount, and hence the amount to be recovered is limited by the number liable to assessment at the date of loss. The amount, as thus fixed, must be raised by assessment. In *Newman v. Association*, 76 Iowa, 56 (40 N. W. Rep. 87), this language is used: "It is well understood that the membership of these assessment associations is

constantly changing, that new members are not assessable for losses which occur before they become members, and the assessments can be made only on the members liable to pay when the loss occurs." Appellee presents the query: "Who are the 250 members at the date of the death?" And it is said that the company has not disclosed the facts. It does not seem to us that such a disclosure is necessary in this case. Only the questions of liability, and the amount, are involved here. The company must have the means of knowledge so as to correctly make the assessment on the basis of the membership at the time of the death, and the judgment ordering an assessment should be carried out so as to raise the amount. We think that the judgment should be so modified as to make the assessment on the basis of the membership at the date of the death, and the cause is remanded for that purpose.—*Modified and affirmed.*

Kinne, J., took no part.