PROUTY, COYLE & PROUTY, Appellants, v. KATE PERRY and SAIDEE W. PERRY, Appellees.

**Agency:** COMPENSATION: CONSTRUCTION OF CONTRACT. A proposition to rent and look after farms for ten percent of the rentals collected to be retained as the agent's compensation, the balance to be forwarded to the owner, does not include a like compensation to them for the collection by other parties of rent notes past due at the time of their employment, and concerning which they performed no service; especially after such agents had for sometime acted upon· and treated the proposition as relating only to such leases and rents as were made and collected by them, and their action had been acquiesced in by the owner.

**Same:** *Quantum meruit.* Where there is a contract governing the agents compensation and the service performed is within the scope of his employment the question of the reasonable value of the service is not . involved.

*Appeal from Humboldt District Court.*—HON. A. D. BAILIE, Judge.

SATURDAY, APRIL 10, 1909.

THIS is an action for an alleged balance due for services for leasing and managing certain lands for the defendants. At the close of plaintiff's evidence, there was a directed verdict for the defendants and judgment thereon. The plaintiff appeals.—*Affirmed.*

*R. M. Wright* and *Prouty, Coyle & Prouty,* for appellant.

*Healy Bros. & Kelleher,* for appellees.

EVANS, C. J.—On and prior to May, 1899, the plaintiff was a partnership engaged in the practice of law and in the land business at Humboldt, Iowa. The defendants were the owners of about two thousand acres of land, situated mostly in Humboldt County; a small part thereof, however, being in Pocahontas County. The most, if not all, of these lands, were at that time in the possession of tenants, and had been so occupied and farmed for some years. In May, 1898, the defendants wrote to the plaintiff, proposing to transfer these lands "to your agency." The substance of the proposal was that they desired the plaintiff to take charge of the renting of these lands. To this proposal the plaintiff assented by letter, and immediately made certain investigations, and furnished certain information requested by the defendants. The information furnished was contained in two or three successive letters written in June and July, and mailed to the defendants, who were then sojourning in Italy. On August 22d the defendants wrote to the plaintiff as follows: "You have not mentioned anything in your letters what your terms would be for taking charge of these lands during our absence, which was a matter we took for granted you would consider in your first writing. Will you please be kind enough to inform us in your next letter?" To this request the plaintiff wrote under date of September 7th, as follows: "Our charges for renting and looking after farms is ten percent of rental collected, and for selling land one dollar per acre." In pursuance of this correspondence, the plaintiff exercised a general oversight over the defendants' lands, and leased some of them to renters, and collected rents amounting to $2,710.70 during the period of their service, which ended in the spring of 1901. Of the rents collected from time to time the plaintiff retained ten percent as its compensation, and remitted the balance to the defendants. The plaintiff also sold one hundred and sixty acres of the land, for which it received a commission of

$160. Its total compensation received during the entire period of its service was $431.07. At the time of plaintiff's employment, the defendants owned a large number of outstanding rent notes, previously executed in pursuance of existing leases, all of which were in the hands of their banker at Washington. These notes did not for the most part pass into the hands of the plaintiff for collection, but were paid directly by the makers to the bank. The amount received by the defendants upon such notes during the period covered by plaintiff's employment amounted to $6,375. The claim of plaintiff is that it is entitled to recover $637.50, being ten percent of such amount. The petition is in two counts. In count 1 the plaintiff claims to recover under the contract, and avers "that, under and by virtue of the contract of employment, the plaintiff took charge of the lands aforesaid on or about May 9, 1898, and leased and managed them until on or about the 3d day of June, 1901, at which time the employment was terminated by the defendants; that by the terms of the written agreement, to which reference is hereinbefore made, the defendants promised and agreed to pay the plaintiff for their services the sum of $1 per acre for all land sold and ten percent of all rentals received for the leasing and managing of lands; that the plaintiff sold one tract of land consisting of one hundred and sixty acres; that the rentals received and collected during the time of the employment of the plaintiff as aforesaid were the sum of $10,000; that the plaintiff has received from the defendants in part payment of compensation the sum of $431.-07." In count 2 plaintiff alleges that the services rendered were reasonably worth $1,137.07. The answer was a general denial and a plea of full settlement.

I. It is the contention of the plaintiff that the contract entered into by the correspondence was not intended to cover all the services actually rendered by the plaintiff to the defendants. It contends that the statement of its

own letter, namely, "Our charges for renting and looking after farms is ten percent of rental collected," should be construed and read as follows: "Our charges for renting or looking after farms is ten percent of rentals collected." In support of this it cites familiar authorities that "and" may sometimes be construed as "or." In our judgment this contention is not tenable. There was no evidence offered as to what services were performed by the plaintiff except the recitals contained in its letters to the defendants. There was no oral evidence on the subject. There is nothing in the correspondence indicating that any service performed by the plaintiff was outside of the original contemplation of the parties. Granting that the contract as written was possibly ambiguous, to substitute "or" for "and" would render it still more ambiguous. Its possible ambiguity was in the phrase "rental collected," as used in plaintiff's letter. That phrase might be understood differently by different persons. It might be understood to mean the rentals collected by the plaintiff, or, possibly, it might be understood to mean the rentals received by the defendants whether collected by the plaintiff or not. The plaintiff charges in its petition that the defendants contracted to pay it "ten percent of all rentals received." This allegation is, at least, a verbal departure from the language of the correspondence. Whatever difference of understanding might reasonably have arisen over the meaning of this phrase, it is very clear from the correspondence that both parties understood it alike, and that both understood that the percentage of the plaintiff was confined to rentals actually collected by it. It is argued that this construction would have enabled the defendants to have terminated the plaintiff's agency after it had performed the services of leasing the lands and before it had collected any rentals, and would have enabled the defendants thereby to deprive the plaintiff wholly of its compensa-

*I. AGENCY: compensation: construction of contract.*

tion; but this is only arguing a case which does not exist. If the plaintiff were claiming that its agency was terminated in a way to deprive it of the fruit of its labor performed, a wholly different question would be presented. But plaintiff is claiming nothing of that kind. During its agency for the defendants it made no complaint of its failure to receive the notes in question for collection, nor did it claim any percentage thereon, except for the collections actually made. Its last business under the agency occurred on April 8, 1901, so far as appears from this record. On that day it had rents in its hands amounting to $525. It deducted as its due therefrom the amount of $53, and remitted to the defendants $472. If its present contention could be sustained, the defendants were owing it at that time arrearage of compensation of $637.-50; but it made no claim at that time of any greater sum than $53. The correspondence between the parties discloses no misunderstanding or difference of opinion between them as to the rate of compensation due the plaintiff. It made remittances from time to time, always deducting its own compensation. The compensation claimed and deducted was always acquiesced in by the defendants. We feel compelled to say, therefore, that the parties to the contract put their own construction upon it and that both understood it alike, and that the final remittance made by the plaintiff to the defendants must be deemed as the equivalent of a settlement.

II. On the trial plaintiff offered to prove the value of its services to be $1,068.57. The offer was rejected by the court upon objection by the defendants. What we have already said is necessarily decisive of this point. The parties did contract with reference to compensation. If the services rendered were within the scope of that contract, there was no *quantum meruit* involved. It is true that the terms of the contract were general. The amount of labor

2. SAME: *quantum meruit.*

to be performed was necessarily more or less uncertain, but the nature and the scope of it were reasonably defined. The amount of compensation to be received was more or less uncertain, but the measure and the method of its ascertainment were reasonably defined. It may be conceded that the plaintiff rendered liberal service and that a laborious correspondence was imposed upon it by repeated inquiries for information, and that it was sometimes called upon to repeat the information that it had once given; but the service was within the scope of the employment nevertheless. The plaintiff had a right at any time to terminate the employment or to ask for a modification of the terms of its compensation; but it did not do so. It can not avoid the contract under which the services were performed by proving that such services were of greater value than the compensation received by it under the contract. We think, therefore, that there was no error in the refusal of the court to permit the plaintiff to go into the question of *quantum meruit*.

The judgment below must be *affirmed*.