J. ROY FRANK v. INTERSTATE BUSINESS MEN'S ACCIDENT ASSOCIATION, Appellant.

**Benefit insurance:** FORM OF ACTION. Where the obligation of a mutual benefit society is simply to levy an assessment to pay a benefit the remedy of one entitled to a benefit is in equity to compel a levy of the assessment; but where the society obligates itself to pay a fixed sum the remedy is an action at law to recover upon the certificate.

In this action the defendant association provided two funds for the payment of benefits, one from the surplus of annual dues and the other from quarterly assessments of its members. It provided also for the payment of benefits according to the extent of injuries suffered. The plaintiff alleged that the association had on hand from annual dues and quarterly assessments enough to pay all benefit and indemnity claims, including that of plaintiff. *Held,* that the action was at law and the court's order in overruling a motion to transfer the case to the equity side of the calendar was proper.

*Appeal from Polk Dstrict Court.*—HON. HUGH BRENNAN, Judge.

WEDNESDAY, JULY 5, 1911.

THE petition alleged that plaintiff became a member of the defendant association June 10, 1908, and that on August 27th following he met with an accident causing the total loss of sight in his right eye, and total disability to pursue his usual and ordinary avocation. He prayed for judgment in the sum of $2,000; being $1,250 as indemnity for loss of eye, and $750 for loss of time.

The defendant moved that the cause be transferred to the law side of the calendar, and filed its answer putting

in issue the allegations of the petition other than that of membership. Certain defenses at law not necessarily to be enumerated and attached were the articles of incorporation and by-laws of the defendant. The plaintiff then amended the petition by alleging that the articles of incorporation provided for the establishment of a reserve fund from the annual dues over and above the amount necessary to pay the expenses of the association, to be used for no purpose other than taking care of benefit and indemnity claims against the association, and that in addition thereto the association made quarterly assessments of $2 per member, but any assessment might be reduced or even passed by the board of directors when funds derived therefrom were not needed for the purposes mentioned or might be increased; that the proceeds of such assessment were kept in a separate fund for the payment of benefit and indemnity claims only; that the proceeds from quarterly assessments and the reserve fund had always been sufficient out of which to pay such claims, and the defendant association then had on hand a sum of money available for payment thereof largely in excess of the claims now made by plaintiff, and an assessment on the members would produce an amount largely in excess of said claims; that the association was authorized to pay claims from the funds mentioned without an assessment, and the articles and by-laws were made a part of the petition as amended. Thereupon the motion to transfer to the equity side of the calendar was overruled, and from this order defendant appeals.—*Affirmed.*

*Dunshee & Haines* and *Read & Read,* for appellant.

*Clark & Hutchinson,* for appellee.

LADD, J.—The appeal is from an order overruling a motion that the cause be transferred from the law to the

equity side of the calendar and there heard.   If the obligation of the association was no more than to levy an assessment on its members and pay the benefit or indemnity stipulated from the proceeds derived therefrom, then the remedy was in equity and the ruling erroneous.   *Rambousek v. Supreme Council of Mystic Toilers,* 119 Iowa, 263; *Collins v. Bankers' Accident Assn.,* 96 Iowa, 216; *Bailey v. Mutual Benefit Assn.,* 71 Iowa, 689; *Rainsbarger v. Union Mutual Masonic Aid Assn.,* 72 Iowa, 191.

On the other hand if the contract, whether contained in the certificate of membership, the articles of incorporation, or by-laws was for the payment of defined or fixed sums of money upon the happening of specific contingencies, then the remedy was at law, and the court rightly denied the application that it be transferred to the equity side and heard as an equitable action.   *Van Norman v. Modern Brotherhood of America,* 134 Iowa, 575; *Hart v. National Accident Assn.,* 105 Iowa, 717; *Fort v. Iowa Legion of Honor,* 146 Iowa, 183.

Whether the ruling was correct, then, depends on the nature of defendant's obligation, and this, as the certificate of membership recites that the holder is "entitled to such benefits as may be provided in and by the articles of incorporation and by-laws," must be ascertained from an examination of such of these as relate thereto.   The matter is covered by portions of article 5, as follows:

Every member of this association shall pay annual dues of $1, which shall be collected at the time and in the manner · fixed by the by-laws adopted by the members of the association.

The income derived from membership fees and dues may be used in so far as necessary for the payment of the ordinary expenses of the association, but if the funds derived from these sources are more than sufficient to pay the reasonable ordinary running expenses of the association, the board of directors may set aside the surplus to constitute a reserve fund to be used for the payment of

benefits and indemnity whenever four assessments of $2 on each member in good standing in any one year fails to provide sufficient income to take care of the benefit and indemnity claims allowed against the association, and the proceedings from dues and membership fees shall be used for no other purposes than those above specified.

The association shall pay to every member who shall while in good standing receive bodily injuries affected solely by external, violent, and accidental means, so much of the proceeds of one assesssment of $2 on each member of the association in good standing as may be required to furnish such member weekly benefits of $25 during the period of total disability, not exceeding two hundred consecutive weeks.

If the disability produced as limited in the preceding paragraph shall be less than total the association shall pay so much of the proceeds of one assessment of two dollars on each member of the association in good standing as may be required to furnish such member such proportion of the benefits allowed for total disability as the disability suffered bears to total disability.

The association shall pay to every member thereof who shall, while in good standing, suffer the complete severance of one hand, one foot, or the loss of sight in one eye within six months from the happening of the accident, one-fourth of the proceeds of an assessment of two dollars on each member of the association in good standing to an amount not exceeding twelve hundred and fifty dollars, subject only to the provisions, conditions, and limitations of the by-laws.

For the purpose of carrying out the object of the association and in conformity with its plan as an assessment accident association assessments of not to exceed two dollars at any one time shall be made on each member of the association in good standing at quarterly periods in the manner and form provided in the by-laws adopted by the members of this association; but the board of directors shall have power to reduce or pass any quarterly assessment when funds are not needed for the payment of benefit or indemnity claims.  Extraordinary assessments may be made whenever required under the provisions of law.

The proceeds of assessment shall never be used for any

other purposes than to pay legal claims for benefits and indemnity under the provision of the articles and bylaws.

When the board of directors is fully satisfied that nothing but final recovery and proof of injury and disability is wanting to fix the liability of the association for the payment of benefits or indemnity, and that the member is in need of financial aid by reason of the loss of income from his ordinary avocation, occupation or employment resulting from the disability it may order advance payments of benefits or indemnity to be made in such amount as may be deemed wise, not exceeding the amount that would be due were final proofs filed at the time of the allowance.

It will be observed that two funds are to be established out of which to pay the claim of benefit and indemnity, that derived from the surplus of annual dues after meeting the expenses of the association therefrom and that derived from the quarterly assessment of $2 per member. In this respect the plan is to be distinguished from that of associations stipulating the payment of the net proceeds not exceeding a specified sum of an assessment on all members as in the cases first cited. Moreover, the benefits to be paid differ according to the nature and extent of the injury suffered, and it would be impractical to pledge the proceeds of an assessment, for these might prove sufficient to pay many benefits. If an assessment is to be made for each benefit and such assessment exceeds the limit, what is to be done with the surplus? Plainly enough the design was to levy assessments quarterly and out of the funds derived therefrom meet the obligations of the association as these arise. Its sources of revenue are the annual dues and the quarterly assessments, and what is promised in event of bodily injuries is "so much of the proceeds of one assessment of $2 on each member of the association in good standing as may be required to furnish such member weekly benefits of $25 during the period of total disability, not to exceed two hundred consecutive

weeks." This merely measures the benefit. It can not exceed the assessment of $2 per member in good standing at the time of the injury, and payment may not continue longer than two hundred weeks, but there is no pledge of the proceeds of an assessment nor would such a pledge be in harmony with the plan of insurance adopted by the association.

This thought is further emphasized by the provision for the payment of an indemnity in event of the loss of a hand, foot, or eye of "one-fourth of the proceeds of an assessment of two dollars of each member" not exceeding $1,250. If this is to be made from an assessment levied for the purpose, what is to be done with the remaining three-fourths of the proceeds? The plan exacts that assessments be collected quarterly, and not upon the happening of each accident, and manifestly the reference to the proceeds of an assessment is intended as a limitation on the amount to be paid by way of benefits or indemnity. Such limitation is definite; for the record of the quarterly assessment will indicate precisely the proceeds of an assessment therefrom at the time of the accident, and the association promises to pay the amount of these not exceeding $25 per week for two hundred consecutive weeks in event of total disability, and one-fourth of such amount not exceeding $1,250 in event of the loss of sight of an eye. If, as is argued, there were then but 725 members who paid their quarterly assessments, the first of these amounts might not exceed $1,450, and the last would be one-fourth of that sum. As all payments are from assessments, this conclusion is consistent with section 1787 of the Code. The plaintiff alleged in an amendment to the petition that enough had always been realized from the annual dues and quarterly assessments to pay all benefit and indemnity claims against the association, and that there was then on hand a sufficient amount derived from these sources to

more than satisfy all existing claims against the association including that of plaintiff.

The court rightly held that the petition as so amended stated a cause of action at law, and therefore did not err in overruling the motion to transfer to the equity side of the calendar.—*Affirmed.*