# SUPREME COURT

OF THE

STATE OF IOWA

AT

DES MOINES, SEPTEMBER TERM, 1917

---

CAMMACK & SON, Appellees, v. WILLIAM WEIMER, Appellant.

PLEADING: Amendments—Shifting From Equity to Law—Effect.
1 It is permissible, in a purely equitable action, to so amend as
to convert the same essential cause of action into one purely
at law. Right to change of forum is the only result.

CONTRACTS: Action for Breach—Pleading—Express Contract Ex-
2 cludes Quantum Meruit. *Quantum meruit* and evidence there-
under have no place in an action wherein the record shows be-
yond question that the parties had expressly agreed on the
amount of compensation.

APPEAL AND ERROR: Review—Presumption—Commingling
3 Quantum Meruit and Express Contract. Prejudicial error re-
sults from receiving evidence and submitting instructions as to
*quantum meruit* when the record shows beyond question that
the parties had *expressly* agreed as to the amount of the com-
pensation, even though the court, in submitting the theory of

*quantum meruit*, limited recovery to the amount actually agreed upon.

EVANS, J., dissents.

**ESTOPPEL:** Grounds of Estoppel—Inconsistent Conduct—Belated
4  Objections. One who has employed an *expert* to supervise certain work, in accordance with definite plans and specifications, is not estopped from objecting to the sufficiency of the results of such supervision by the fact that he was present during the progress of the work and then made no objections.

*Appeal from Hardin District Court.*—J. L. KAMRAR, Judge.

MONDAY, MAY 14, 1917.

REHEARING DENIED SATURDAY, SEPTEMBER 29, 1917.

ACTION to recover compensation for services rendered under an express contract of employment to oversee and superintend the reconstruction, alteration and repair of a certain dwelling house owned by the defendant. Verdict and judgment for the plaintiff. Defendant appeals.—*Reversed.*

*D. C. Chase* and *Williams & Huff*, for appellant.

*W. W. White* and *Davis & Cameron*, for appellees.

GAYNOR, C. J.—We set out only so much of the issues as are necessary to an understanding of the matters herein disposed of.

On the 12th day of September, 1914, the plaintiffs filed an amended and substituted petition at law, in which they allege that, on or about the 1st day of June, 1911, they entered into an oral contract with the defendant, by the terms of which the defendant employed them to make certain alterations and improvements upon the residence property of the defendant, located in the town of Radcliffe; that these alterations and improvements were to be made according to the orders, directions and instructions given them by the defendant as the work progressed; that, among

other things, they were to remodel, rebuild and improve the dwelling house, put in a cellar under the house, build porches, steps and walks, paint and plaster the building, and put on a new roof; that, for their personal labor in connection with the building of the house, they were to receive the customary compensation; that the defendant has fully paid the plaintiffs while employed in said work for all ordinary manual labor performed by them under said contract. It is further alleged that, in addition to the manual work so to be performed, the plaintiffs were employed to oversee and superintend the work upon the property, purchase such material as was necessary, at the defendant's expense, look after the employment of labor, and generally oversee and superintend the work and see that it was done properly, and for this service, they were to receive a sum equal to 8 per cent of the total cost of the labor and material furnished and expense in connection therewith; that, in pursuance of the contract, they furnished the labor and material, all of which was paid for by defendant at a total cost of $8,707.60; that plaintiffs have fully complied with all that was required of them by the contract, and the defendant is indebted to them for superintending and overseeing the work a sum equal to 8 per cent of the total cost, or $696.60. For this they ask judgment.

In a second count to the petition, plaintiffs reiterate the facts herein set out in the first count, and ask to recover the fair, reasonable and customary value of the services rendered by them in overseeing and superintending the work, and ask on this count the same as prayed for in the first count.

1. PLEADING: amendments: shifting from equity to law: effect.

It appears that this action was commenced originally in equity, and the plaintiffs sought to have established and foreclosed a mechanics' lien against the property upon which the work was done. Upon the filing of this

amended and substituted petition, defendant appeared, and filed a motion to strike it from the files, on the ground that the action, having originally commenced in equity, presented a new and separate cause of action, distinct from that alleged in the original petition, and not germane thereto. This motion was overruled. This presents the first complaint urged here.

It is not well taken. The ground is not tenable, as is apparent from an examination of the two pleadings. The change is only in the forum. The same cause was first presented in equity, and equitable relief prayed for. This amended and substituted petition presents a cause of action based upon the same facts, without any claim or basis for claim for equitable relief. That this is allowable, see *Barnes v. Hekla Fire Ins. Co.*, 75 Iowa 11; *Newman v. Covenant Mut. Ins. Assn.*, 76 Iowa 56; *Rohrbach v. Hammill*, 162 Iowa 131.

To this petition, then, the defendant filed an answer, in which he admits the employment of the plaintiffs to make alterations and repairs on his dwelling house, denies that the contract was as set out by the plaintiffs, and alleges that the agreement was that plaintiffs should personally superintend the repairs and construction, and would do the work in a good, first class, workmanlike manner, and in accordance with certain plans and specifications then furnished them by the defendant; that, upon the completion and acceptance of the work by the defendant, defendant would pay plaintiffs' firm a bonus of 8 per cent upon all material and labor that went into the construction of the dwelling house, not, however, including the following items: (1) All interior decoration, painting of every kind, both labor and material. (2) All cement work. (3) All plumbing and heating, and all work in connection therewith. (4) All plastering and mason work. (5) All material used in the

garage, and labor on the same.    (6)    All material pur-
chased by the plaintiffs themselves and used by them on
other buildings than the dwelling house.    (7)    Any shingles
except those used upon the dwelling house.

It was expressly agreed that the plaintiffs should give
their entire time to overseeing the purchasing of material
and seeing that the same complied with the specifications,
and personally supervising all work upon the house, and
seeing that the same was done according to the specifica-
tions furnished them.    Defendant says that plaintiffs failed
to supervise the work as agreed, and failed to do the work
in a workmanlike manner, and failed to complete it within
the time specified in the contract; that the defendant fur-
nished the material on demand of plaintiffs, paid all bills
promptly, and performed all parts of his contract.

To simplify the case, it may be well to say, at this time,
that the record discloses that the plaintiffs were employed
to superintend and supervise the construction of this build-
ing; that the building was constructed at a total cost
shown by the following stipulation: The cost of labor and
material in the home premises of the defendant was
$8,130.84, exclusive of heating and plumbing, and the cost
of the shingles that went into other buildings was $559.86.
To further simplify, we may say that the allegation of the
plaintiffs' petition that the work was to be done "according
to the directions and instructions given them by the de-
fendant as the work progressed," is not supported by the
evidence.    It appears that the real contract was that the
work was to be performed according to the plans and speci-
fications furnished them by the defendant at the time the
contract was entered into.

The record as finally made shows, and both parties agree, that the contract provided that plaintiffs were to receive 8 per cent of the total cost of the reconstruction and repair of this building, except certain matters which, though a part of the cost or connected with the reconstruction, defendant claims were not to be estimated and included in figuring the total cost on which plaintiffs' compensation of 8 per cent was to be figured.

2. CONTRACTS:
action for
breach: pleading: express
contract excludes *quantum meruit.*

So, in this last analysis, the controversy between the plaintiffs and the defendant centers around this proposition, so far as the plaintiffs are concerned: What work in connection with the building did the contract cover? On what work and material entering into the construction of the building was plaintiff entitled to receive a commission of 8 per cent? Both agree that the work was to be done according to plans and specifications furnished by the defendant to the plaintiffs. Both agree that plaintiffs were to have 8 per cent of the cost of said building, except as to items disputed by defendant hereinbefore set out in his answer. It is apparent, therefore, that a contract was made between these parties, and the method of computing the compensation fixed by the contract. The only difference is as to the work to be considered in connection with the reconstruction of the house in estimating this compensation. When that was settled and determined, the compensation was fixed at 8 per cent. However, upon the trial, the court seems to have recognized the right of the plaintiffs, notwithstanding the admitted contract, to prove what the services were reasonably worth in superintending and overseeing the matters covered by their contract, whatever that might be; and of this, complaint is made.

The court submitted both counts of the petition, the right to recover on the contract and the right to recover on *quantum meruit,* and permitted witnesses, over the ob-

jection of the defendant, to testify as to what the services of the plaintiffs were reasonably worth in supervising and superintending the reconstruction of this building.

This is the second error assigned, and we think it is well taken. The mere pleading of a claim upon *quantum meruit* does not entitle the plaintiff to prove what his services were reasonably worth, in the face of a record showing conclusively that there was an express contract between the parties fixing the compensation. Where parties agree upon the compensation to be awarded for services, that agreement controls and governs the parties in the assertion of any rights, and fixes the measure of compensation.

There is some dispute as to the terms of the contract in respect to the work to be covered by the contract. There is no dispute as to the method of ascertaining the compensation when the other is ascertained. When the work was performed, the compensation was fixed on the basis of 8 per cent of the actual cost of the work covered by the contract. That was a fixed rate of compensation, and yet, in face of this, the court allowed witnesses to testify as to what such services were reasonably worth. In *Prouty v. Perry,* 142 Iowa 294, 298, Division 2 of the opinion, this court said:

"The parties did contract with reference to compensation. If the services rendered were within the scope of that contract, there was no *quantum meruit* involved. It is true that the terms of the contract were general. The amount of labor to be performed was necessarily more or less uncertain, but the nature and scope of it were reasonably defined. The amount of compensation to be received was more or less uncertain, but the measure and the method of its ascertainment were reasonably defined."

So here, the amount of work was uncertain. The sum to which plaintiffs might ultimately be entitled was uncer-

tain, but the method of its ascertainment was fixed by the contract and controlled the parties, and no evidence as to what it was reasonably worth, whether more or less or the same as the contract price, was competent to be received or to be considered by the jury.

In the case at bar, the amount asked under the *quantum meruit* count, of course, is the same as that asked under the count based on the contract, and the *quantum meruit* count does not ask for more than was asked for in the count on the contract; but evidence was permitted to go to the jury tending to show that the services were worth more than the contract called for—more than the party would be entitled to under the terms of his contract. This was clearly incompetent.

3. APPEAL AND ERROR: review: presumption: commingling *quantum meruit* and express contract.

It may be argued that this was not prejudicial, because the court instructed the jury, on the second count of the petition, that they might allow plaintiffs the reasonable value of the services rendered, but *not to exceed 8 per cent* of the actual cost. It may be argued, therefore, that this evidence was without prejudice, inasmuch as both parties agreed that the measure was to be 8 per cent. This argument does not appeal to us, for the reason that we recognize in juries a disposition to adjust the burden of losses that may follow even the faithful performance of a burdensome contract. Further, the disposition to do equity, which we find in most jurors, is appealed to. In this case, it is claimed that plaintiffs did not perform their contract according to its terms. This sort of testimony serves as a basis of adjustment in the minds of the jury, and suggests a balancing off of the loss which the plaintiffs sustained because of the inadequacy of the consideration in their contract, against the loss resulting to the defendant for a failure to perform the contract according to its terms; and thus a door for speculation is opened

to the jury that ought to be kept closed. Even though the contract is improvidently made, and the consideration is less than it ought to be,—less than is reasonable,—yet the contract controls, and the rights of the parties must be ascertained and determined by the contract. We think there was clearly prejudicial error in the admission of this testimony, and for that reason the cause must be reversed.

4. ESTOPPEL: grounds of estoppel: inconsistent conduct: belated objections.

In view of another trial, it is well for us to say that, so far as the plaintiffs' claim is concerned, their duty to the defendant was that of overseers and inspectors, superintendents of the work to be done for the defendant under the plans and specifications submitted. They were selected as experts on these lines, and their services secured and paid for because of the benefits which were supposed to flow to the defendant by reason of their superior skill and knowledge in respect to the matters entrusted to them. The house could be built without an overseer or inspector. It therefore became their duty to exercise that skill and learning which is required of one in that business in the neighborhood, and to give time and attention to see that the work was done substantially according to the plans and specifications. It was their duty to see that the work was done in a good, workmanlike manner. From the nature of the contract, the law implies a duty to exercise that skill, diligence, care and learning that are usually employed to bring the work to a successful issue. It follows, therefore, that the court was wrong in saying, as a general proposition, that, if the defendant was present and saw the work progressing, and made no objection, he would be estopped to make objection now. Defendant had a right to rely upon the plaintiffs to perform their contract. To perform their contract required that they superintend and oversee the work, to the end that, when finished, it might comply with the plans and specifications which were their

guide as to what was required to be done to make the contract complete. The workmen were under their control, and supervision. The material was purchased by them, and should have been purchased to comply with the plans and specifications. The workmen were chosen by them, and it was their duty to supervise their work, inspect it, and see that it was done substantially as called for by the plans and specifications. See *Smith & Nelson v. Bristol*, 33 Iowa 24. Of course this would not be true as to changes from the plans and specifications made on the direction of the defendant, or at his request. Such changes would not be subject to this rule; nor could the plaintiffs be holden liable for any defects in the plans and specifications. An acceptance of the building, when completed, would not constitute a waiver of any of the defendant's otherwise just and legal claims. This was the defendant's home. He was occupying it. He could not do other than accept it, and such acceptance does not relieve the plaintiffs from responsibility for the faithful performance of their contract.

There are other errors assigned, but, as we are satisfied that they will not arise on another trial, we do not take the time to dispose of them now. Indeed, some of the errors could not reasonably arise again, upon a fair presentation of the record on another trial.

For the errors pointed out, the cause is—*Reversed.*

LADD, SALINGER and STEVENS, JJ., concur.

EVANS, J., dissents.