ELIZA SUTHERLAND, Appellee, v. STANDARD LIFE AND. ACCIDENT INSURANCE COMPANY, Appellant.

1. **Accident Insurance**: COMPLIANCE WITH CONDITIONS OF POLICY: BURDEN OF PROOF. In an action upon a policy of accident insurance which contains conditions, the violation of which would defeat a recovery, it is not incumbent upon the plaintiff to allege and prove compliance with such conditions on his part, but noncompliance is a matter of defense, to be alleged and proved by the defendant.

2. ———: ———: EVIDENCE. The assured was killed by falling from a street car, and the defense was that he came to his death by a violation of the conditions of the policy, in that he was not exercising due care for his personal safety, and that he was intoxicated. The jury having found specially that the insured was not intoxicated at the time of the accident, and that he was using due care, and the evidence being so conflicting that a disinterested person who read the testimony might have doubts as to the fact, *held*, that a verdict for the plaintiff would not be disturbed by the supreme court. Riding upon the rear platform of a street car is not in itself such a want of care as to defeat a recovery in such case.

3. ———: ———: ———. In such case a physician, who testified that he had seen the assured at the hospital, was not permitted to state whether he noticed anything about his breath indicating intoxication. *Held*, that this was not error, since the time when the insured was seen was not shown; and as the defendant did not renew the question after such time was shown, he has no ground for complaint.

4. **Verdict**: FAILURE TO ANSWER SPECIAL INTERROGATORIES: EFFECT. A general verdict is good, even though special interrogatories are not answered, if it has support without such special findings. Accordingly, where the jury reported that they could not agree upon two of the special interrogatories, it was not error for the court to direct them, if possible, to agree upon the others, and to return their findings with the general verdict, where the two interrogatories in question did not relate to ultimate facts, and no possible answers to them would have been ground for setting aside the general verdict.

*Appeal from Superior Court of Council Bluffs.*—J. E. F. McGEE, Judge.

TUESDAY, JANUARY 31, 1893.

ACTION on an accident insurance policy. Judgment for the plaintiff, and the defendant appealed.—
*Affirmed.*

*Ambrose & Duffie* and *E. E. Aylesworth*, for appellant.

*S. B. Snyder* and *J. J. Stewart*, for appellee.

GRANGER, J.—The plaintiff is the beneficiary of an accident policy issued by the defendant company to one Richard Miller. In November, 1889, Miller was killed while traveling on the electric motor between Omaha and Council Bluffs. The insurance was "against the effect of injury to the body caused by external violent and accidental means within the meaning of this policy, its agreements and conditions printed herein or on the back hereof." The following are some of the conditions of the policy: "This insurance does not cover disappearance; nor any injury happening to the insured when in a condition of insanity; nor any injury, fatal or otherwise, of which there is no visible mark upon the body; nor death or disablement happening to the insured while intoxicated, or in consequence of his having been under the influence of any narcotic or any intoxicating drink whatever." "Suicide or self-inflicted injury, whether felonious or otherwise, and whether the insured be sane or insane; dueling; fighting; wrestling; unnecessary lifting; racing; gymnastic sports (unless solely for recreation); voluntary over-exertion; unnecessary exposure to danger, unless in an effort to save a human life." "It is an express condition of this policy that the insured shall at all times use care and diligence for his personal safety and protection."

An averment of the petition is "that on the ninth day of November, 1889, the said Richard Miller was

run over by an electric street-car train, and thereby received external and violent injuries, which injuries within a few hours after the happening thereof, caused his death. The answer contains the following defensive allegations: "*Second.* That in violation of the rules of said company, and against the protest of its employees having said train in charge, the said Richard Miller persisted in riding on the rear platform of the front car of said motor train, and in climbing on and off the guards around the same. While said Miller was so upon the train he did not use due care and diligence for his personal safety and protection, and that said alleged accident was caused by his want of care and diligence for his personal safety. *Third.* That at the time of said alleged injury and accident the said Richard Miller was intoxicated. *Fourth.* That at the time of the said alleged accident and injury the said Richard Miller was under the influence of intoxicating drinks, and that said alleged accident and injury was in consequence thereof. Wherefore the defendant demands judgment for costs."

I. The plaintiff, to establish the fact that the death of Miller was accidental within the meaning of the policy, made no proofs to show that he was not negligent, or to negative the claim that he was intoxicated; and at the close of the plaintiff's direct evidence the appellant moved the court to direct a verdict in its favor, because there was no proof to show that "Miller had complied or was complying with the terms and conditions of the policy as set forth in paragraphs 3 and 5 attached to and made a part of said policy." They are the paragraphs set out above. The court refused the motion, and its action is assigned as error. The proposition presents the question whether the plaintiff in such a case must, to justify a recovery, make such proof, or are they matters of affirmative

1. ACCIDENT insurance: compliance with conditions of policy: burden of proof.

defense. As applied to this particular case, a very conclusive answer is that no such proof was required of the plaintiff, because not pleaded by her. Certainly no such proofs are required of the plaintiff unless they are necessary matters of averment, and, if necessary, and not averred, and the omission is passed unchallenged by demurrer, the averments as well as the proofs are waived. Code, section 2650. The effect of a motion in arrest of judgment in such a case we do not determine. By taking issue upon the allegations of the petition it is an admission that they constitute a cause of action, and the defendant can not insist that the plaintiff shall prove facts outside the record in order to make out his cause of action. *Frentress v. Mobley*, 10 Iowa, 450. This holding has been many times followed.

It will, however, be well for us to consider the question upon another ground. The appellant quotes from Mr. Bliss on Life Insurance (section 436), to the effect that an accident "is an unforeseen event, a misfortune, and also such as is not the result of negligence or misconduct." It is then urged in effect that there should be proof to show that the death was "a misfortune" "an unforeseen event," and "was not the result of negligence or misconduct." The evidence clearly justified a finding that the death was a misfortune and an unforeseen event in such a sense as to show that it was accidental within the meaning of the policy, unless the fact of negligence or misconduct was established to defeat such a conclusion. It is not the duty of the plaintiff to establish such facts. Usually the burden of showing a wrongful act is with the party who seeks advantage from it. In *Freeman v. Travelers' Insurance Co.*, 12 N. E. Rep. (Mass.) 372, it is said: "In an action upon a policy which contains many provisos and conditions there is a practical wisdom, which courts have recognized, in compelling

the insurance company to allege and prove the want of compliance with any particular proviso or condition on which it relies.   In that case a condition of the policy was that the assured should use "all due diligence for personal safety and protection."   The question in that case, as it is in this, was, who has the burden of proving the breach of such a condition.   It was held to be with the company, and many cases are cited in support of the holding, and, among others, *Peidmont & Arlington Life Insurance Co. v. Ewing*, 92 U. S. 377. *Cronkhite v. Travelers' Insurance Co.*, 43 N. W. Rep. (Wis.) 731, is a case much like this, and it is there held that, "if anything contained in the provisos will defeat the action, it is a matter of defense."   The following are additional authorities upon the question: *Coburn v. Travelers' Insurance Co.*, 13 N. E. Rep. (Mass.) 604; *Redman v. Ætna Insurance Co.*, 49 Wis. 431, 4 N. W. Rep. 591; *Newman v. Covenant Mut. Association*, 76 Iowa, 64.   Numerous authorities are cited on the question of contributory negligence in actions where a recovery is sought because of negligence, but they are not applicable to this case.

II. The assured came to his death by falling from the platform of the street car and the train passing over him.   He was a dining-car waiter in the employ of the Chicago & Northwestern Railway Company, and was on his way from Omaha to Council Bluffs, to take his train, when he was killed.   He was riding on the platform of the car, and there is testimony tending to show that he was intoxicated, and that he did not use due care and diligence for his personal safety, and it is contended that the state of the evidence is such as to justify a reversal. The jury, upon interrogatories submitted by the defendant, found specially that Miller was not, "just prior to and at the time he received his injuries," intoxicated, and that his injuries were not received

"in consequence of his having been under the influence of intoxicating drink." It also found that at the time of the injury he was "using due care and diligence for his personal safety and protection." As to the intoxication of Miller, the evidence is plainly conflicting, and this is not denied; but it is said that it overwhelmingly preponderates in favor of the appellant. The evidence consists entirely of the observations of witnesses who saw him before and after the accident, and, without expressing our views as to a mere preponderance, we have no hesitancy in saying that a disinterested person who reads the testimony will have doubts as to the fact, and under such a state of the evidence the question is clearly one for the jury. The witnesses for the defense on the question of intoxication stated particular facts as indicating such a condition, as that he spit or slobbered on his clothes; that he was "fooling" with an employee of the motor company on the train in an unusual manner, etc. It is in evidence that he was a very lively person, and "a great one to be cutting up." One witness for the defendant says: "It was from his cutting up that I concluded that he probably had a drink or something of that kind." Those who were near him after the injury testify that they saw nothing to indicate that he was intoxicated; that they were close over him, and did not smell liquor on his breath, as they likely would have done if he had been as drunk as by some he was represented to be. It is enough to say that the evidence is too conflicting on this point for us to interfere.

The same is also true as to his using due care for his safety. It is true that he was on the rear platform of the front car, but we do not regard that, by itself, as showing a want of care such as to defeat a recovery. While on the platform, he was, a part of the time at least, holding to the railing, and some four others were

there with him. That such a position is not, of itself, negligence, see *Nolan v. Brooklyn City & N. R'y Co.*, 87 N. Y. 63, where it is said, speaking of authorities cited to sustain a contrary rule: "In all these cases there was some element warranting an inference of negligence beyond and outside of riding on the front platform. These authorities do not establish the doctrine asserted; on the contrary, the rule is settled that, independent of the mandate of the statute, which we have seen has no application here, it is not, even in the case of steam cars, negligence *per se* for a passenger to stand on the front platform of a moving car." Several authorities are cited in support of the rule. We are referred by appellant to *Bon v. Railway Passenger Assurance Co.*, 56 Iowa, 667. It will be seen by reference to the case that the facts are different. In that case the person injured stood on the steps of the platform. The policy required that he should observe the rules and regulations of common carriers when riding. It was a regulation of the railway company on whose line he was riding that passengers should not stand on the platform, and the opinion gives prominence to that fact. The case does not hold that the mere fact of standing on the platform would defeat a recovery. If the authorities can be said to be in conflict, the weight is largely with the rule that the question of due care is one for the jury under the circumstances of this case.

III. One Dr. Green was a witness for the defendant, and testified that he saw Miller at the hospital. He was then asked what he noticed with reference to his breath, and for his judgment as to his being intoxicated. Objections to the questions were sustained. He then testified that he was at the hospital about the time Miller arrived, or a little before. He was then again asked if he noticed anything in reference to Miller's breath, and a like

objection was sustained. He then said: "I saw him late in the afternoon; probably about 5 o'clock." There appears to be no error in the rulings. It will be observed that, without the last statement, when the time of seeing Miller was fixed, there was nothing to show when the doctor saw him, so that the court could see that the testimony was proper. After he fixed the time, so that the relevancy of the testimony could be known, there was no effort to obtain it. The rulings, when made, were correct. It is likely that when the doctor fixed the time of seeing Miller, it was thought to be too remote from the time of the accident to render the testimony proper.

IV. Aside from the interrogatories to which we have referred, upon which the jury found specially, as to intoxication and due care, two others were submitted at the instance of the defendant, as follows: "*Interrogatory 1.* Did the insured, Richard Miller, neglect and refuse to go from the platform of the motor inside the motor when requested and directed by the conductor having the said motor train in charge, and did said Richard Miller shortly afterwards fall from said platform, and receive fatal injuries?" "*Interrogatory 5.* Was the insured, Richard Miller, warned of his danger by an employee of the company upon whose car he was riding, just prior to his receiving the injuries from which he afterwards died?" After some deliberation, the jury came into court, and stated that it could not agree upon interrogatories 1 and 5. The court against the objections of the defendant, then instructed that if it could not agree as to numbers 1 and 5, but could as to the others, to do so, and return the findings with the general verdict. Of this action complaint is made, and we are referred to *Darling v. West*, 51 Iowa, 259. It will be seen by reference to that case, that a general verdict could not be reached properly without reaching

*4. VERDICT: failure to answer special interrogatories: effect.*

a conclusion upon the questions not answered, and it is so stated in the opinion. The record demonstrated that the general verdict had not the necessary findings of fact for its support. That is not true in the case at bar. The facts sought by the questions 1 and 5 are not ultimate facts. They are minor facts as evidence, to show other facts·that are ultimate and essential to the determination of the case. The verdict has support without these findings. If both questions had been answered in the affirmative, with the verdict as returned, we could not disturb it. *Garretty v. Brazell,* 34 Iowa, 100. The failure of the jury to return a special finding will not necessitate a reversal, unless, because of the failure, it is manifest from the record that the jury has not found the necessary facts to authorize its general verdict. *Dively v. City of Cedar Falls,* 27 Iowa, 227; *Hatfield v. Lockwood,* 18 Iowa, 296; *Hardin v. Branner,* 25 Iowa, 364.

The other questions presented are so related to those we have considered that a further notice of them is unnecessary. The judgment is AFFIRMED.