IDA C. SMITH v. THE AETNA LIFE INSURANCE COMPANY, Appellant.

Accidental Injury: JURY QUESTION. In an action on an insurance policy there was evidence that the insured stated that he was going to leave a train on its stop at a certain crossing, but left it at a point over 1,000 feet before the crossing was reached. Two witnesses testified that insured descended the car steps, and stood facing inward, holding the railings with both hands, just before leaving the train, and that he afterwards held on with one hand, and was dragged a short distance. One witness said insured appeared like a man going to step down another step, as though there was another step, and that, in his opinion, insured fell and did not jump, from the train. *Held,* that the jury was authorized to find that insured stepped from the train inadvertently, so that his injury was the result of an event which took place without his foresight or expectation, and a verdict for insured would be sustained.

SAME. In an action on an accident policy, evidence that insured was standing on the step of a moving railway passenger car, holding on the railings with both hands, when he fell, did not, as a matter of law, show "voluntary exposure to unnecessary danger," within an exemption of liability contained in the policy.

BURDEN OF PROOF: *Instructions.* Where, in an action on an accident insurance policy, not covering the act of leaving a moving conveyance using steam as a motive power, the whole charged showed

that plaintiff must make a *prima facie* case of accidental death, and that then the burden shifted to the defendant of showing that by reason of breach of some condition, it was not liable, it was not error to instruct that the burden was on defendant to establish its defense that deceased at the time of the injury was purposely leaving or trying to leave a railway car, and did not accidentally slip or fall from the steps.

CONDITIONS OF POLICY: *Violation of law as a defense.* It was not error to refuse to instruct that if insured sustained the injuries while leaving or attempting to leave the train, without the consent of the person in charge, at a place other than the established depot, he violated the law, and thus broke a condition of the policy; such conduct being a violation of Code, section 4811, making it a misdemeanor to get off or on railway cars in motion.

Review on Appeal: ASSIGNMENT OF ERRORS: *Rulings below.* Where objections were made to questions, and a motion to strike out the last answer, but no assignment of error was predicated on the court's rulings, the evidence stands for consideration on appeal.

*Appeal from Black Hawk District Court.*—·HON. A. S. BLAIR, Judge.

FRIDAY, DECEMBER 20, 1901.

ACTION upon a policy of accident insurance, by the beneficiary therein, to recover the sum of $2,000; being the indemnity provided in said policy in case of the death of the assured, Samuel E. Smith, who was plaintiff's husband. There was a jury trial, which resulted in a verdict for plaintiff. From the judgment rendered thereon, defendant appeals.—*Affirmed.*

*Dawson & Estey* and *E. A. Dawson* for appellant.

*Boies & Boies* for appellee.

WATERMAN, J.—Samuel E. Smith, who was a deputy sheriff of Black Hawk county, lost his life by stepping or falling from a rapidly moving train on the Illinois Central Railroad as he was returning to his home in Waterloo, from a

trip to Independence, where he had been for the purpose of taking a patient to the hospital for the insane. The accident happened shortly after midnight of September 7, 1899. The first complaint made is that the evidence does not sustain the verdict, in this: The burden was upon plaintiff to establish that Smith's death was the result of an accident, and the evidence does not so show. The instructions of the trial court placed the burden upon plaintiff of establishing that the death of the assured was "caused as alleged" (*id est,* by accidental means), and we have, therefore, to determine whether she made any substantial showing in this respect. When he went upon the train at Independence, Smith entered the smoking car, taking a seat and riding therein until reaching Waterloo. As the train entered that city, Smith left his seat and went out upon the platform. He had told a fellow passenger that he intended to alight when the train stopped at the crossing of the Great Western Railroad, as that would save him about three squares' walk in getting home. As a matter of fact, he left the train at a point 1,046 feet before the Great Western crossing was reached, and while the train was running at least ten miles an hour. Two witnesses testify as to the manner in which he got off. He descended the steps and stood upon the lower one for just an appreciable space of time. It was quite dark. He was holding onto the railing with both hands. As he paused for an instant on this step, he was facing inwards, as one witness says,—towards the center of the car. In this position he left the train. After so leaving, he hung on to the railing with his left hand, and was dragged a short distance. One of the witnesses, a brakeman, says, "He seemed to me like a man who was going to step down on another step,—as if he thought there was another step there." While the question in response to which this statement was made was objected to by defendant, it was general in character, calling upon the witness to say whether Smith appeared to jump or fall from

the train. No motion was made to strike the answer, and no assignment of error presents the question of the propriety of the court's action in receiving this testimony. Further, this witness stated that, in his opinion, Smith fell from the train. The record on this matter is the same as we have set out with relation to the last question and answer spoken of, except that there was a motion to strike out the answer. No assignment of error is predicated upon these rulings of the court. Under well established rules, this evidence stands for our consideration. Taking the case thus made, and the jury were authorized in finding that Smith did not intend to alight until the train stopped at the crossing, and inadvertently did so, by attempting to descend to another step, which he supposed was below the one upon which he was standing. If this was the case, his injury was accidental, within the definition of that term as heretofore given by this court, for it was the result of an event which took place without his foresight or expectation. It was an undesigned and unexpected happening. *Feder v. Association,* 107 Iowa, 538.

II. The policy in suit did not cover accident or death resulting in whole or in part from voluntary exposure to unnecesary danger, and it is claimed on the part of appellant that Smith's death was so caused. The burden of proof was upon the defendant to establish the breach of this clause of the contract. *Follis v. Association,* 94 Iowa, 435; *Jones v. Same,* 92 Iowa, 652; *Sutherland v. Insurance Co.,* 87 Iowa, 505. "Voluntary exposure to danger" means something more than negligence contributing to the injury. "The policy was, no doubt, intended to cover accidents, although the assured may have been guilty of negligence which approximately contributed to his injury." *Follis v. Association, supra.* The act which causes the exposure may be voluntary, yet the exposure may be involuntary. *Jones v. Association, supra; Burkhard v. Insurance Co.,* 102 Pa. 262 (48 Am. Rep. 205); *Equitable Acc. Ins. Co. v. Osborn,* 90 Ala. 201 (9 South. Rep. 869, 13 L. R.

A. 267). The test seems to be, did the assured appreciate that by doing the act he was putting life or limb at hazard? *Matthes v. Association,* 110 Iowa, 222. The evidence discloses that Smith was accustomed to traveling on railroad trains; that he had ridden on this train before. We cannot say, as matter of law, that his standing upon the car steps, holding to the rail with both hands, was a "voluntary exposure to danger," within the meaning of those words as we have defined them. This conclusion has entire support in the opinion of Mr. Justice Harlan, in the circuit court of appeals, in a case so like in its facts as to put it upon all fours with the one we are considering. See *Travelers Ins. Co. v. Randolph,* 24 C. C. A. 305 (78 Fed. Rep. 754); also *Collins v. Insurance Co.,* 96 Iowa, 216. Indeed, it cannot be said, as matter of law, that deceased was even negligent in standing upon the platform of the car, holding to the railings as he did. *Sutherland v. Insurance Co.,* 87 Iowa, 505, and cases cited therein. The cases referred to by appellant can all be distinguished from the one at bar. *Shevlin v. Association,* 94 Wis. 180 (68 N. W. Rep. 866, 36 L. R. A. 52), is the one most relied upon. In that case the condition in the policy was against "exposure to unnecessary danger;" and the court bases its decision on the wording of the contract, and distinguishes the case from those in which the condition was against "voluntary" or "willful and wanton" exposure.

III. Defendant asked the court to instruct the jury that if Smith sustained the injuries which resulted in his death while he was leaving or attempting to leave the train, without the consent of the person in charge, at a place other than the established depot, he was guilty of a violation of law, and thus broke a condition of the policy, and their verdict should be for defendant. This was refused. Section 4811 of the Code is the provision sought to be embodied in this instruction. So far as it refers to an attempt to leave the train it is erroneous. It is no violation of this section for one lawfully upon a train to make prep-

aration with the intent to leave it at a place elsewhere than the depot if the train shall stop. So far as the instruction is confined to a case of actual alighting, the matter was fully covered in the charge given. While the court, in one paragraph, used the word "intentional" for the word "unintentional," it was in such a connection that it could not have been misunderstood, even if that paragraph had stood alone. There were, however, other instructions containing the same thought, expressed with clearness and precision.

IV. It was a condition of the policy that the risk did not include or cover the act of entering or leaving "a moving conveyance using steam as a motive power, except cable and electric cars," etc., and a breach of this condition was set up as a defense. On this issue the trial court instructed as follows: "(4) One of the defenses relied on by the defendant in this case is that the cause of death of the deceased, Samuel E. Smith, was his leaving or trying to leave a moving conveyance, using steam as a motive power, in violation of the terms and conditions of the policy in suit. Upon this question you are instructed that, in order to sustain its defense, the burden is upon the defendant to show by a fair preponderance of the credible evidence before you that the deceased, at the time of receiving the injury resulting in his death, was purposely leaving or trying to leave the car upon which he was riding, and did not accidentally slip or fall from the steps upon which he was standing immediately prior to said accident. The fact that deceased was standing upon the platform and steps of the car immediately prior to said accident would not constitute a defense, under this clause of the contract, unless he was at such time purposely leaving or trying to leave such car and steps, and to alight therefrom." Certainly the burden was upon defendant to establish this defense. See authorities heretofore cited. It seems to be the thought of counsel for appellant that this instruction placed the burden on defendant, in the first instance, of showing that Smith's death was not accidental.

But the whole charge, when taken together, discloses clearly that plaintiff was obliged to make a *prima facie* case of accidental death; and then the burden shifted to defendant of showing that, by reason of the breach of some condition of the contract, it was not liable.   It will be noticed that the instruction does not say that a failure to sustain such burden by defendant would warrant a recovery by plaintiff.

We have, in what has been said, covered the questions argued.   We find no prejudicial error, and the judgment is AFFIRMED.