PACIFIC MUTUAL LIFE INS. CO. v. ADAMS *et al.*

No. 442. Opinion Filed November 16, 1910.

1. JURY—Number Concurring in Verdict—Change of Procedure—Constitutional Law. Prior to the admission of the state into the Union defendant, in a civil suit pending in the district court of Oklahoma Territory, was entitled, under the 7th amendment to the Federal Constitution, to a common-law jury of 12 and to a unanimous verdict. This was a right in procedure and, as to all such suits so pending, was preserved under section 1 of the Schedule to the Constitution, providing: "No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the form of government. but all shall continue as if no change in the form of government had taken place," and remained unaffected by the change of procedure prescribed by the Constitution, article II, section 19, providing "The right of trial by jury shall be and remain inviolate, and a jury for the trial of civil * * * cases in courts of record, other

than county courts, shall consist of twelve men * * * In civil cases, * * * three-fourths of the whole number of jurors concurring shall have power to render a verdict. * * * In case a verdict is' rendered by less than the whole number of jurors, the verdict shall be in writing and signed by each juror concurring therein," and an instruction in the trial of such cause after statehood, in effect that the jury might return a verdict on concurrence of 9 ofi their number. is error.

2. **SAME.** Where in the trial of a cause after statehood, which was pending in the district court of· Oklahoma Territory prior to that time, and in which defendant was entitled to a common-law jury of 12 and to a unanimous verdict a verdict is returned against him signed by 11 of the jurors, such verdict is null.

3. **INSURANCE—Accident Policy—Notice and Proof of Death— Limitation of Time.** Provisions in an accident insurance policy requiring that immediate written notice must be given the insurer of, any accident and injury for which a claim is to be made, and affirmative proof of death furnished insurer within two months from the date of insured's death, are conditions subsequent and are fulfilled by notice and proof of death within a reasonable time after insured's death under all the circumstances of the case.

4. **SAME—Reasonable Time—Case.** Insured died August 5th, 1903;. leaving him surviving plaintiff, as beneficiary in an accident insurance policy on deceased's life. Plaintiff, who lived several' hundred miles away from where deceased was killed, first learned of said policy on January 8, 1904. but not of its terms or the name of the company by which it was issued, and did not obtain said policy until January 23, 1904, on which date he sent written notice to the insurer of the accident and demanded payment, and on February 5, 1904, furnished proof of death; held,. that such notice and proof of death were furnished within a reasonable time, under all the circumstances, and that plaintiff's failure so to do within two months after the death of insured, as required by the policy. was no defense to a suit thereon..

5. **SAME—Limitation of Time for Suit.** Though an accident policy provide that written notice must be given to the insurer at its home office of any accident and injury for which a claim is to be made thereunder, and affirmative proof of death furnished the insurer within two months from the time of death; that suit thereon may not be brought before the expiry of three months from the date of filing proofs at its home office, nor brought at all unless begun within six months from the time of the death; held, that such six months limitation applies only where, after furnishing said notice and proof of death within a reasonable time thereafter and after the expiry of said three months, sufficient time remains in which to bring suit within six months from said death.

6. **INSURANCE—Accident Policy—Construction—"Unnecessary Exposure to Danger."** The expression "unnecessary exposure to
Vol. 27—32.

danger" includes exposure attributable to negligence on the part of the insured. It is intended to hold the insured to the exercise of ordinary care and exempt the insurer from liability in all cases of injury occurring in whole or in part through a failure on the part of the insured to exercise such care.

7.    **TRIAL—Conflicting Evidence—Questions for Jury.** Where a given state of facts are such that reasonable men may fairly differ upon the question as to whether the insured died of injuries resulting from "unnecessary exposure to danger," the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that such a question is ever considered one of law for the court.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; George W. Clark, Judge.*

Action by William F. Adams against the Pacific Mutual Life Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Cottingham & Bledsoe,* for plaintiff in error.
*Paul F. Cooper,* for defendants in error.

TURNER, J. On June 28, 1904, William F. Adams, defendant in error, as plaintiff, sued the Pacific Mutual Life Insurance Company, plaintiff in error, in the district court of Oklahoma county to recover $2,000 on an accident insurance policy issued by said company on the life of James Adams, and in favor of plaintiff as beneficiary. After issue joined, there was trial to a jury on March 28, 1908, which resulted in judgment for plaintiff. The insurance company brings the case here. In this court the death of William F. Adams has been suggested and the cause, by consent, revived in the name of Wallace Estell, Jr., as special administrator.

The only question necessary for us to determine is, Did the court err in instructing the jury, over objection, in effect, that they could render a verdict on nine of their number concurring, and in rendering judgment on the verdict concurred in and signed by eleven of said jurors? The charge was based on article 2, sec. 19, Const. Okla., which on this point reads:

"The right of trial by jury shall be and remain inviolate, and a jury for the trial of civil cases in courts of record, other than county courts, shall consist of twelve men * * * In civil cases, three-fourths of the whole number of jurors concurring shall have power to render a verdict. * * * In case a verdict is rendered by less than the whole number of jurors, the verdict shall be in writing and signed by each juror concurring therein."

In support of its contention that this was error, defendant contends that, as this suit was brought prior to statehood it had, when brought, a right to a common-law jury of twelve, under the 7th amendment to the federal Constitution, and to a unanimous verdict, and that said right was unaffected by said change in the form of government and by said section of the state Constitution.

The point is well taken. The right claimed was one of procedure existing in an action pending at the time of the admission of the state and continued unaffected by virtue of section 1 of the Schedule to the Constitution, which reads:

"No existing rights, actions, suits, proceedings, contracts or claims shall be affected by the change in the form of government, but all shall continue as if no change in the form of government had taken place."

This was held, in effect, by the United States Circuit Court of Appeals in *St. L. & S. F. R. Co. v. Cundiff*, 171 Fed. 319. See, also, *Blanchard & Co. v. Ezell*, 25 Okla. 434, 106 Pac. 960; *Loeb v. Loeb*, 24 Okla. 384. In the Cundiff case the court said:

"Construing all of these provisions together, we are of opinion that they do not change, and were not intended to change, the method of procedure in cases pending in the courts of Indian Territory and of the territory of Oklahoma, but that the civil cases pending in the Indian Territory should, after statehood, continue under the law in force in the Indian Territory."

We are therefore of opinion that defendant's right to a common-law jury and to a unanimous verdict was wrongfully impinged on by said instruction; that it was a right preserved to him by the Schedule to the Constitution; that the change prescribed by the Constitution for the concurrence of a less number of jurors than twelve, being a change in procedure, was not applicable to this

case, pending as it was on the advent of statehood; that the verdict returned under the instruction was in fact no verdict at all (*Girder v. Bryan,* 94 Mo. App. 27), and that the judgment of the court thereon must be reversed. But in view of the probability of another trial, we will determine whether the court erred in refusing to instruct the jury, peremptorily, to return a verdict for defendant. Defendant insists that it did:

"First. Because the notice required by the terms of the policy was not given.

"Second. Because the proof of death was not furnished as required by the terms of the policy.

"Third. Because the suit was not instituted as required by the terms of the policy, and was not instituted until more than six months after the policy was in the possession of the plaintiff.

"Fourth. Because it appears from the uncontradicted evidence that the death of the insured was brought about by an unnecessary exposure to danger."

There is no conflict in the testimony. The evidence discloses that the policy sued on was delivered and thereupon took effect at Moxa, Wyoming, May 3, 1903; that on August 5, 1903, the insured received injuries within the terms of the policy, from which he died the same day; that plaintiff, named therein as beneficiary, was his son and is a minor 18 years old, a common laborer, and lived with his mother and six younger children in Shawnee, Oklahoma; that immediately on the death of the insured the mother received a telegram that he had been killed, and, some two or three months later, a letter telling her that he had his life insured; that, owing to his poverty, plaintiff did not go to the scene of the killing, but thereafter for about a month made diligent efforts to learn the name of the company issuing the policy and to get possession of it; that, failing so to do, he turned the matter over to his attorney, who, after diligent effort, on January, 8, 1904, received information of its number and the name of the company issuing it, but not its terms, and later, on January 23, 1904, the policy itself; that on said day he gave said company notice in writing of the death of insured and the claim, and on

February 5, 1904, furnished it proof of death, and, on payment being refused, brought this suit. The policy provides:

"Immediate written notice must be given the company at San Francisco, California, of any accident and injury for which a claim is to be made, with full particulars thereof and full name and address of the insured. Affirmative proof of death * * * must also be furnished to the company within *two* months from the time of death * * * Legal proceedings for the recovery hereunder may not be brought before the expiry of *three* months from date of filing proofs at the company's home office, nor brought at all unless begun within *six* months from the time of the *death.* * * * *"

We think the notice of injury and proof of death furnished the company by plaintiff was sufficient, under the terms of the policy, and that the first two grounds of assignment, *supra,* are not well taken. A literal compliance with these terms of the contract cannot be exacted. As conditions subsequent, they must receive a liberal construction in favor of the plaintiff as beneficiary in the policy, under all the circumstances in the case. To hold that plaintiff cannot recover because of his failure to give notice and furnish proof of death within two months thereafter, he not knowing of such requirement until 5 months thereafter, would be to require of him an impossibility, and such of course we cannot do. Speaking of similar conditions, the court in *Brown v. Accident Association,* 18 Utah, 265, said:

"Doubtless the purpose of such conditions in a policy is to afford the insurer an opportunity within a reasonable time after the occurrence to inquire into the cause of the accident, and ascertain the surrounding facts and circumstances while fresh in the memory of witnesses, so as to determine whether or not liability under the contract exists. The condition in the policy, requiring notice to be given within a specified time, with full particulars of the accident, operates upon the contract of insurance only after the fact of the accident. It is a condition subsequent, and must therefore receive a reasonable and liberal construction in favor of the beneficiary under the contract."

*Munz v. Standard Life, etc., Co.* (Utah) 72 Pac. 182, was a suit to recover an amount claimed to be due on an accident in-

surance policy issued to the insured for the benefit of his estate, of which plaintiff was appointed administratrix. The facts were, the policy was issued about May 16, 1899. The insured was accidentally killed June 29, 1900. Plaintiff as next of kin resided in Salt Lake City, 234 miles away, and learned of the death of insured for the first time October 1, 1900. Owing to her poor circumstances, she was unable to have his body or effects removed to Salt Lake City, but about February 15, 1901, procured said effects, including the policy of insurance sued on, the existence of which prior to that time was unknown to her. On February 23, 1901, she gave notice to defendant company of his death, made demand for payment of the policy, which was refused because notice had not been sent to defendant and no proof of death had been made within two months thereafter. As soon as she was able to secure legal assistance, to wit, May 1, 1901, she sent to defendant due proof, whereupon payment was again refused, because the same were not made within the specified time. She then brought suit. A general demurrer was sustained to the complaint reciting these facts, in support of which it was urged that said complaint disclosed that neither notice of the fatal accident was given nor proof of death furnished to the company within the time limit of the policy. The policy was identical in terms to the one here. The Supreme Court reversed the ruling of the lower court and, in effect, held that the terms of the policy had been substantially complied with in the particulars complained of; that the same had been furnished within a reasonable time after the death of insured, under the circumstances, and that plaintiff's failure to submit proof of death within two months after the death was no defense to the suit on the policy. In passing the court said:

"In the case at bar, the beneficiary was not aware of the death of the insured until about three months after it occurred, was distant 234 miles from the place of the accident and death, and was not aware of the existence of the policy until over seven months after the fatal occurrence. Being thus ignorant of these things, how could she comply literally with the terms of the policy as to notice and proof? How could she give 'full particulars' of

an accident the occurrence of which was not within her knowledge, or the 'full name and address of the insured' when she knew nothing of the insurance? We cannot assume that the parties to. the insurance contract intended such absurdities. The contracting parties doubtless intended that notice and proof should be furnished at the earliest practicable time after the happening of an accident and injury for which liability would be claimed, so that the real facts of the case could be ascertained by the insurer before time had effaced them from the memory of witnesses. The word 'immediate,' under such circumstances as are disclosed in this record, cannot be construed as excluding all intervening time between the occurrence of the death and the giving of notice. It does not, by any fair construction of the policy, mean instantly, but 'immediate notice' means notice within a reasonable time, under all the circumstances of each particular case, and no doubt, ordinarily unless there are circumstances excusing delay, the notice should be given at once. It would, however, be both an unreasonable and unfair interpretation to hold that, as used in the policy, the word 'immediately' required the doing of a thing impossible for the beneficiary to do. Such provisions must receive reasonable construction in favor of the beneficiary."—
and, after citing abundant authority in support of the holding, reversed and remanded the case.

We are, therefore, of opinion that notice and proof of death were furnished within a reasonable time after the requirements of the policy were brought home to plaintiff as beneficiary, which is sufficient under all the evidence. But was the suit brought in time? Defendant urges that it was not and is barred, and bases its contention upon the six months clause in the policy, *supra,* providing, in effect, that suit thereon shall not be brought "at all unless begun within 6 months from the time of the death. * * *" In support of this contention is cited *McFarland v. R. Y. Officials,* 5 Wyoming, 125, which, in substance, holds that "from the time of the death" means *from the time of the death,* on which event the statute of limitation began to run.. It is claimed that, in as much as this policy is a Wyoming contract, proof of the law as laid down in said opinion should have been admitted in evidence as part of the common law of that state, and,

as such, binding on the court. Whether binding or not, or improperly rejected as evidence or not, we take it as conclusive of the law, so far as it goes, being supported by reason and authority, and sufficient to bar this suit unless other terms in the policy, not in the one there construed, modify or control the clause in question and thereby render it not an authority in point. With reference to the clauses requiring notice and proof of death within two months thereafter, we have just held, in effect, that this means notice within a reasonable time, under all the circumstances, after notice to the beneficiary of the death of the insured and the terms of the policy. Now, if such information is not received by the beneficiary within a sufficient length of time to enable him to comply with those conditions, and have remaining a sufficient length of time within the six months in which to bring suit, it is clear that to require him so to do would be unreasonable and hence not within the intent or contemplation of the parties to the policy. As this contingency might frequently occur, as it did in this case, it may fairly be presumed to have been within the contemplation of the parties at the time this policy was issued that this six months limitation was intended to refer only to those cases in which the information came to the beneficiary within sufficient time to give notice and make proof of loss and have a reasonable time remaining after three months have passed within which to bring suit within six months. In other words, it is fair to presume that said six months limitation was not intended to apply in cases where that time is necessarily consumed by the beneficiary in performing the conditions prescribed in the policy or where, after complying with the terms of the policy, a reasonable portion of the six months is not left remaining in which to bring suit.

In *Dennison v. Mason's Fraternal Accident Ass'n,* 69 N. Y. Supp. 292, the contention was, as here, that the bar had fallen on the suit. The certificate provided that no suit shall be brought unless brought within one year from the date of the alleged accident. The accident occurred on October 25, 1897. The suit was brought on January 7, 1899. The court held the point well taken,

unless the certificate disclosed some provision modifying or controlling that clause. The claim was for $25 a week for 52 weeks, pursuant to the terms of the certificate. It was provided in the certificate that legal proceedings to enforce payment thereunder should not be brought until three months had expired after receipt by the association of acceptable and satisfactory proofs of loss. The court held that, as such proofs could not be furnished until the disability had ceased and 52 weeks had passed, suit could not be brought within 15 months after the accident, and, in effect, that the bar of one year could be held to apply only to those cases in which the disability had ceased within sufficient time to furnish proof of loss and have remaining a reasonable time after the three months within which to bring suit before the end of the year, and in passing said:

"As this contingency is contemplated by the contract of insurance, the year limitation within which the action can be commenced must refer only to those cases in which the disability has ceased within sufficient time so that the proofs of loss may be furnished, and a reasonable time remain after the three months have passed before the expiration of the year. If, however, the disability shall continue so long that the proofs of loss cannot be furnished, and the three months expire before the expiration of the year, the law will still give to the plaintiff a reasonable time after the expiration of the three months from the furnishing of the proofs of loss within which to commence the action. The three months in the case at bar expired upon the 19th day of December, and upon the 5th of January the summons was issued, and upon the 7th served. We think, under the circumstances of this case, that the delay in the commencement of the action was not unreasonable, and that the plaintiff complied with the fair intendment of the contract."

For the reason that the question here decided was expressly left open in the Wyoming case, *supra,* that case is not in point. There the court said:

"It is admitted by the defendant that if the time allowed for, or necessarily occupied by, the claimant, under contract of insurance, in performing such conditions precedent should include all the time specified within which suit must be brought or should

not leave a reasonable time for that purpose, the right of action would not be lost by lapse of the time specified. * * * So cases cited to these propositions will be eliminated from this discussion."

We are therefore of opinion that, as the death occurred August 5, 1903, and as it was only possible to comply with the terms of the policy on January 23, 1904, on which day notice of the fatal accident and of the claim was given, and as it was impossible to make proof of death and bring suit within the twelve days yet remaining before the expiration of six months and at the same time observe the clause requiring legal proceedings to be stayed until the expiry of three months after proof of death—that this six months clause was not intended to operate nor the bar thereof to fall, but that the insured was intended to have thereafter a reasonable time in which to bring suit, which was done. But should the demurrer have been sustained on the 4th ground? The policy did not cover injuries resulting from "unnecessary exposure to danger or perilous venture (unless in the humane effort to safe life)". Defendant contends the proof shows that insured died as the result of injuries resulting from such unnecessary exposure. On this point there is no conflict in the testimony. It shows that deceased was a railroad man, 42 years old, a car repairer and was insured, "in consideration of an order to the paymaster." At the time of his death he had been out of the employ of the Oregon Short Line for a day or two and had ridden that day, by implied permission, on one of its freight trains into Moyer Junction, where he was killed. On arriving at the Junction the train on which he rode was coupled on to some cars on a siding; that immediately thereafter deceased climbed on top of the cars, 25 in number, and was last seen, by the man in charge, walking towards the head end of the train, which was at that time going down grade on the side track around a sharp curve, pushed by a switch engine. His object in so doing does not appear. In about five minutes thereafter his body was found cut to pieces lying across a frog, having been run over by said train.

Before we can hold that the court erred in refusing to in-

struct the jury peremptorily to find for the defendant, we must be able to say as a matter of law that insured brought about his own death by an "unnecessary exposure to danger."

These were the exact words used in the policy to preclude recovery in *Sargent v. Cent. Acc. Ins. Co.* (Wis.) 87 N. W. 796, Of them the court said:

"The force and effect of the clause in the policy excepting the defendant from liability for injuries due to unnecessary exposure to danger has received authoritative construction in this court in *Shelvin v. Association*, 94 Wis. 180, 68 N. W. 866, 36 L. R. A. 52, where it is held to be satisfied by the same acts that would constitute contributory negligence.   *   *   * "

Turning to that case, as we find the words there construed were "exposure to unnecessary danger," we take it that the court held the two expressions to mean practically the same thing. Of the latter the court said:

"It plainly includes all cases of exposure to unnecessary danger where such exposure is attributable to negligence on the part of the assured; that is, the exception was intended to hold the insured responsible for the exercise of ordinary care, and to except from the provisions of the policy all cases of injury occurring in whole or in part through a failure to exercise such care."

So that, to hold the company not liable under the terms of the policy, we must say that the death of the insured was the result of his own negligence as a matter of law. This we cannot do, and are of opinion that the same was a question for the jury, under proper instructions, for the reason that, although the facts are undisputed, reasonable men might very well differ as to whether a railroad man, a car repairer, 42 years old, was in the exercise of ordinary care for his personal safety, under all the circumstances attending his death, in walking, without apparent motive, on top of a moving freight train on a side track, in daylight, while said train was being pushed by a switch engine. *M., K. & T. Ry. Co. v. Shepherd*, 20 Okla. 626.

*Travelers Ins. Co. v. Randolph*, 78 Fed. 754, was a suit on an accident policy excepting "voluntary exposure to unnecessary danger." The defense was that plaintiff had intentionally and of

a purpose sprung or jumped from a passenger train. The facts in substance were that plaintiff was a passenger on a passenger train returning home to Memphis from St. Louis in November, 1894. The train was composed of a sleeping car, two passenger cars and a baggage car. He occupied a seat in the sleeper. He arose quite early in the morning and was seen several times standing on the platform of the cars while the train was going at 15 or 20 miles an hour. At one time he stood on the platform with his back against the door of the car; at another he was seen holding on to the railing with one foot on the platform, the other on the top step of the platform; at another he was seen holding with one hand to the railing attached to the body of the car and with the other to the platform railing, "one foot up like a man going to jump off, and the other foot on the lower step—standing like a railroad man who was going to jump off." At the close of the evidence defendant moved for a peremptory instruction in its behalf, on the ground that the insured "voluntarily exposed himself to unnecessary danger and that his injury and consequent death resulted therefrom." This motion was overruled and defendant appealed, assigning this as error. The Circuit Court of Appeals, in passing, said that, under the facts, the jury might well have concluded, from the examination of the witness who swore that deceased was standing like a railroad man who was going to jump off, that he was mistaken and that there was nothing in the conduct of the insured indicating a purpose to put his life in peril by jumping from the train; but that there was no room to doubt that he was riding on the platform while the train was running at from 15 to 30 miles an hour. Said the court:

"But the defendant's motion for a peremptory instruction distinctly presented the question whether riding upon the platform of a car running 15 to 25 miles an hour, even if the passenger, while so riding, holds to a railing, and thereby diminishes the danger of being thrown from the car, was, within the meaning of the policy and as a matter of law, a voluntary exposure of himself to unnecessary danger. The principal contention of the defendant is that the jury should have been so instructed."

And, after defining what was meant by a "voluntary exposure to unnecessary danger," the court said:

"Whether, in the present case, the exposure was unnecessary, and whether the assured was aware of and appreciated the danger, and intentionally or purposely risked it, were questions of fact that were properly left for the determination of the jury under appropriate instructions by the court as to the law of the case. * * * "—

and affirmed the judgment of the lower court.

*Smith v. Aetna, etc., Life Ins. Co.,* 115 Iowa, 217, was a suit on an accident insurance policy. The facts were that the insured lost his life by stepping, or falling, from a rapidly running train while returning to his home from Independence to Waterloo. The accident occurred shortly after midnight in September, 1899. On boarding the train at Independence insured took a seat in the smoking car and rode therein until reaching Waterloo. As the train entered that city he left his seat and went out on the platform. He told a fellow passenger that he intended to alight when the train stopped at a certain crossing, as that would save him some distance walking home. He left the train over a thousand feet before reaching the crossing and while the train was running about ten miles an hour. Two witnesses swore that he descended the steps and stood upon the lower one for just an appreciable length of time, facing inward towards the center of the car, and in this position he left the train. It was quite dark. After so leaving he clung to the railing with his left hand and was dragged a short distance, one witness saying "he seemed to me like a man who was going to step down on another step—as if he thought there was another step there, and that in his opinion insured fell from the train." In passing, the court said:

"We cannot say, as a matter of law, that his standing upon the car steps, holding to the rail with both hands, was a 'voluntary exposure to danger,' within the meaning of those words as we have defined them. * * * "—

and cited, in support of its holding, *Travelers Ins. Co. v. Randolph, supra,* and *Collins v. Ins. Co.,* 96 Iowa, 216, adding:

"Indeed, it cannot be said, as a matter of law, that deceased was even negligent in standing upon the platform of the car, holding to the railings as he did."—

citing *Southerland v. Ins. Co.*, 87 Iowa, 505, and cases there cited —and affirmed the judgment of the lower court.

We are therefore of opinion that the court did not err in refusing to instruct peremptorily for defendant; but for the error indicated the cause is reversed and remanded for a new trial.

All the Justices concur.